FILED

*MAY 31 PH 3: 53*

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Alan Himmelfarb
LAW OFFICES OF ALAN HIMMELFARB
2757 Leonis Blvd
Los Angeles, CA 90058
Telephone: (323) 585-8696
Fax: (323) 585-8198
consumerlaw1@earthlink.net

Scott A. Kamber
Ethan Preston
KAMBER & ASSOCIATES, LLC
11 Broadway, 22d Floor
New York, NY 10004
Telephone: (212) 920-3072
Fax: (212) 202-6364
skamber@kolaw.com
epreston@kolaw.com

E-Filing

*Counsel for Plaintiff, Matthew Elvey*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

MATTHEW ELVEY, an individual, on his own behalf and on behalf of all similarly situated,

       Plaintiff

     v.

TD AMERITRADE, INC., a New York corporation

       Defendant.

**C 07 2852**

**BZ**

**BY FAX**

## CLASS ACTION COMPLAINT

Matthew Elvey ("Elvey" or "Plaintiff"), for his complaint, alleges as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through his attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally, which are alleged upon knowledge:

### Nature of the Claim

1.    This case is about TD AmeriTrade's provision of its accountholder's private email addresses to spammers, which sent and continue to send unsolicited commercial email (particularly email promoting certain penny stocks) ("stock spam") to these private

email addresses. The exposure of its accountholder's email addresses violated and breached TD AmeriTrade's privacy policy.

2.  This is a national class action brought on behalf of two classes: 1) TD AmeriTrade accountholders residing in California ("California Resident Class"), and 2) Internet access services which received spam sent to TD AmeriTrade accountholder's email addresses which is traceable to TD AmeriTrade's breach of its privacy policy ("CAN SPAM Class").

3.  TD AmeriTrade's provision of its accountholder's email addresses not only facilitated the transmission of spam to its accountholder's email addresses, it did so in violation of express representations in its privacy policy that it would not share its accountholder's personal information with third parties (except for certain situations not applicable here). On behalf of the California Resident Class, Elvey seeks injunctive relief under California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1782(a)), equitable relief under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17203), and damages and equitable relief for breach of fiduciary duty.

4.  TD AmeriTrade's provision of its accountholder's emails facilitated and initiated the transmission of various stock spam to their Internet facilities, in violation of the CAN SPAM Act of 2003. On behalf of the CAN SPAM Class, Elvey seeks damages and injunctive relief under 15 U.S.C. § 7706(g).

**Parties**

5.  **Plaintiff Matthew Elvey:** Matthew Elvey is a resident of San Francisco, California. Elvey is an accountholder at TD AmeriTrade. Elvey maintains a domain name. Elvey provides mail and web service for that domain name (although Elvey subcontracted the maintenance and hosting of the server which provides those services to a third party). Elvey also provides for email accounts (including forwarding, filtering and technical support) as a service to his users, as well as disposable email accounts.

6.  **Defendant TD AmeriTrade, Inc.:** TD AmeriTrade, Inc. ("TD AmeriTrade") is a New York corporation which maintains its headquarters at 4211 South 102nd Street, Omaha,

Nebraska 68127. TD AmeriTrade provides securities brokerage services, with retail brokerage representing the vast majority of its business. TD AmeriTrade was established in 1971 as a local investment banking firm and began operations as a retail discount securities brokerage firm in 1975. TD AmeriTrade has an estimated 6,191,000 accountholders as of September 2006.

## Jurisdiction and Venue

7. Elvey asserts a claim under the CAN SPAM Act for damages and injunctive remedies on behalf of himself and all others similarly situated. This Court has federal subject matter jurisdiction over this case under 28 U.S.C. § 1331.

8. Defendant is a New York corporation headquartered in Nebraska. Defendant can only be a citizen in New York and Nebraska. The members of the California Resident Class (and the California CAN SPAM Class) are diverse from Defendant. The CAN SPAM Class is a national class whose members are scattered throughout the fifty states (including the 48 states besides New York and Nebraska) and the U.S. territories: there is minimal diversity of citizenship between proposed IAS class members and the Defendant. The aggregate of claims asserted in both classes exceed the sum or value of $5,000,000. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).

9. This Court has personal jurisdiction over the Defendant under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed, and Plaintiff incurred injury, in California (and, specifically, the Northern District of California).

10. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(1), (2), (c).

## Intradistrict Assignment

11. A substantial part of the events which give rise to the claim occurred in the place of Elvey's business and residence, San Francisco, in San Francisco County, California. Under Local Rule 3-2(e), this civil action should be assigned to the San Francisco division of the Northern District of California.

## Factual Background

Class Action Complaint                    3

12. **Email Anatomy:** The domain name portion of an email address follows the @ symbol. (Thus, the domain name for "webmaster@cand.uscourts.gov" is "cand.uscourts.gov".) The domain name is used to direct email to the correct email server, where a user can access the messages sent to his address. The CAN SPAM Act defines "domain name" as "any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet." 15 U.S.C. § 7702(4).

13. The CAN SPAM Act defines "header information" as "the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." 15 U.S.C. § 7702(8).

14. **Stock Spam:** Stock spammers typically buy some portion of the stock before they tout it, heavily promote the stock via spam, and then sell the stock after its prices rises on the purchases of spam recipients. It has been shown that stock spam correlates with significant short-term increases in the touted stock prices (and a corresponding collapse soon thereafter). *See* Laura Frieder & Jonathan Zittrain, Spam Works: *Evidence from Stock Touts and Corresponding Market Activity*, *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=920553 (Mar. 14, 2007); Rainer Böhme & Thorsten Holz, *The Effect of Stock Spam on Financial Markets*, *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=897431 (Apr. 2006).

15. **Elvey's First Email Address:** First When Elvey became an accountholder with TD AmeriTrade, he provided TD AmeriTrade with an email address ("First Email Address"). The First Email Address was unique: Elvey never otherwise published, used, or provided the First Email Address to any other person. Consequently, the only persons who had the First Email Address were TD AmeriTrade and Elvey.

16. **TD AmeriTrade's Privacy Statement:** At all times relevant to this complaint, including prior to Elvey's provision of the First Email Address to TD AmeriTrade, TD

AmeriTrade published a Privacy Statement which indicated that TD AmeriTrade would

not disclose personal information to third parties, except in certain circumstances that do

not apply to this Complaint. The relevant portion of the Privacy Statement has been

reproduced below:

> Do we share the information collected with any other third parties?
> The cornerstone of our Privacy Statement is the commitment to keep our clients'
> personal information confidential. *TD AMERITRADE does not sell, license, lease
> or otherwise disclose your personal information to any third party for any
> reason, except as noted earlier and as described below*:

> - To help us improve our services to you, we may engage another
>   business to help us to carry out certain internal functions such as
>   account processing, fulfillment, client service, client satisfaction
>   surveys or other data collection activities relevant to our business.
>   We may also provide a party with client information from our
>   database to help us to analyze and identify client needs and notify
>   clients of product and service offerings. Use of the information
>   shared is strictly limited to the performance of the task we request
>   and for no other purpose.

> - Periodically, we may invite you to participate in advertisements,
>   promotions and special offers offered by TD AMERITRADE or
>   by other sponsoring organizations. These could include retailers,
>   airlines and Internet service providers. Your participation may
>   require us to gather and share your personal information or may
>   require you to supply personal information to the promotion
>   sponsor. For example, a referral program may require that we
>   provide your name as a reference to a prospective client. It is
>   always your choice whether or not to participate.

> All third parties with which we share personal information are required to protect
> personal information in a manner similar to the way we protect personal
> information. Examples of information shared are identifying information such as
> name, mailing address, e-mail address, telephone number, and information on
> account activity.

> If at any time you choose to purchase a product or service offered by another
> company, any personal information you share with that company will no longer
> be controlled under our Privacy Statement.

> TD AMERITRADE also reserves the right to disclose your personal information
> to third parties where permitted by law or where required by law to regulatory,
> law enforcement or other government authorities. We may also disclose your
> information as necessary to credit reporting or collection agencies, or when
> necessary to protect our rights or property.

TD AmeriTrade, *TD AMERITRADE Privacy Statement*,

http://www.tdameritrade.com/privacy.html (Feb. 2007) (emphasis added).

17.   **Elvey Receives Spam at the First Email Address:** Nonetheless, beginning on or about

1.

2

3

4     November 15, 2006, Elvey began to receive stock spam at the First Email Address. The

5     spam promoted penny stocks (low-priced, speculative security of smaller firms,

6     typically traded outside the major exchanges (NYSE, NASDAQ, or AMEX)). The spam

7     urged its recipients to purchase the touted stock.

8   18.   **Elvey's Second Email Address:** On or about April 12, 2007, Elvey provided TD

9     AmeriTrade with another email address ("Second Email Address"). To ensure that he

10     was not responsible for leaking the Second Email Address in any way, Elvey set up a

11     separate hard drive with a separate operating system on his computer for the exclusive

12     purpose of logging into TD AmeriTrade's website and checking email from TD

13     AmeriTrade – prior to providing TD AmeriTrade with the Second Email Address.

14   19.   Again, Elvey never otherwise published, used, or provided the Second Email Address to

15     any other person, and the only persons who had the Second Email Address were TD

16     AmeriTrade and Elvey. Nonetheless, Elvey began to receive stock spam at the Second

17     Email Address.

18   20.   **Spam Traceable to the Breach of TD AmeriTrade's Privacy Statement:** The spam

19     sent the First Email Address contained false and inaccurate header information. The

20     domain name for the mail server through which the spam was sent did not match the

21     domain name for the originating email address (which indicates the originating email

22     address was false). Indeed, although the originating email addresses contains a real

23     domain name, the name transmitted with the email address and the originating email

24     address itself were false. Initial investigations indicate that the originating emails are

25     invalid, because the mail servers responsible for the domain names contained in these

26     email addresses returned email to a sampling of these originating email addresses and

27     indicated that the email addresses did not exist.

28   21.   Elvey never received spam at any other email addresses at his domain name that would

      indicate that the spam sent to the First and Second Email Addresses were merely part of

      a "dictionary" attack. In a dictionary attack, spammers attempt to send spam to email

      addresses at a particular domain name by methodically guessing and/or testing which

domain names are valid.

22. Having eliminated every other possibility, Elvey and his counsel conclude that TD AmeriTrade revealed the First and Second Email Addresses to third parties, which send the stock spam to the First and Second Email Addresses. The spam Elvey received is indelible proof that TD AmeriTrade breached its Privacy Statement, either inadvertently or intentionally. All told, Elvey received about 80 spam messages to date via the First and Second Email Addresses.

23. As the spam sent to the First and Second Email Addresses is uniquely attributable to TD AmeriTrade's exposure its accountholder's email addresses to spammers, Plaintiff can establish a set of spam common to each of the class members alleged herein that is traceable to such exposure ("Traced Spam"). Spam is automated and digitally identical: a statistically sound sampling of CAN SPAM Class members will prove, by a preponderance of evidence, that particular Traced Spam messages sent to the sampled class members were in fact sent to all class members.

24. **Elvey's Correspondence to TD AmeriTrade:** Elvey's counsel sent correspondence by certified or registered mail, return receipt requested, dated May 18, 2007, demanding that TD AmeriTrade rectify the preceding breach of the Privacy Statement for all California residents. TD AmeriTrade received this correspondence on May 21, 2007, when the return receipt was signed by one Amie Hermanson.

25. **TD AmeriTrade's Communication to Alleged Class Members:** On May 30, 2007, Elvey and his counsel learned that the situation was very widespread through a story on Slashdot (a prominent online forum for technology and technology policy news). *See* Slashdot, *Who's Trading Your E-mail Addresses?*, *at* http://yro.slashdot.org/yro/07/05/30/1444236.shtml (May 30, 2007). Through this story, Elvey learned that his situation was far from unique and that TD AmeriTrade breach the Privacy Statement, not only with respect to himself, or even all California residents, but apparently with respect to all TD AmeriTrade's accountholders, without limitation.

26. The story further indicates TD AmeriTrade's response to customer inquiries is is to either

1

2

3

4     1) deny any breach of the Privacy Statement and attribute the spam to dictionary attacks

5     or 2) indicate it is investigating the situation, but decline to provide further details.

6   27.   The story indicates that the exposure of accountholders' email addresses continues to

7         the present day. If TD AmeriTrade's exposure of accountholders' email addresses is

8         intentional, it is lying to its customers. If TD AmeriTrade's exposure of accountholders'

9         email addresses is unintentional, as it appears from taking TD AmeriTrade's statements

10        at face value, *whatever security breach led to the exposure is ongoing and has not yet*

11        *been fixed.*

12  28.   An ongoing security breach at TD AmeriTrade would be problematic on several levels.

13        First, if TD AmeriTrade cannot secure its information system, accountholders cannot be

14        sure that the funds and securities in their account are safe from diversion. If spammers

15        can steal email addresses from TD AmeriTrade, they can also steal funds.

16  29.   Second, an ongoing security breach renders the representations made in the Privacy

17        Statement knowingly and intentionally misleading. TD AmeriTrade continues to entice

18        new accountholders to sign up and provide personal information to it under the

19        representation that it will secure that information from third parties, while it knows (or

20        should know) that representation is false.

21  30.   Third, TD AmeriTrade is generally privy to a wealth of sensitive financial information

22        regarding its accountholders.  Without any information about the scope of the security

23        breach, Elvey and the other accountholders must presume this information is

24        unacceptably vulnerable in an ongoing security breach.

25  31.   Last, at least with respect to California residents, and residents of many other states, TD

26        AmeriTrade is obligated to disclose suspected security breaches to its accountholders

27        under Cal. Civ. Code § 1798.82. If there is a security breach, TD AmeriTrade may have

28        violated is statutory duties to disclose the same to California residents.

    32.   Elvey would ordinarily wait until 30 days after the transmission of the correspondence

          alleged above, pursuant to Cal. Civ. Code § 1782(a). However, TD AmeriTrade's

          communications with potential class members, and the implications of an ongoing

security breach TD AmeriTrade have impelled Elvey to act immediately.

33. **TD AmeriTrade's Spoliation of Evidence:** Further, the story indicates that TD AmeriTrade's current response to inquiring customers asks them to "be sure to delete any spam you might receive, then empty your e-mail's trash so that it's no longer kept there, either." It appears that, although TD AmeriTrade was aware of potential class claims no later than May 21, 2007, it still urges potential class members to destroy this evidence.

**Class Certification Allegations**

34. Plaintiff seeks certification of a California Resident Class and a CAN SPAM Class under both Rule 23(b)(2) and Rule 23(b)(3).

35. The California Resident Class asserts claims for breach of fiduciary duty, and for violations of California's CLRA (Cal. Civ. Code §§ 1750-84), and UCL (Cal. Bus. & Prof. Code §§ 17200-10) on behalf of all TD AmeriTrade accountholders residing in California.

36. The CAN SPAM Class asserts claims for violations of the CAN SPAM Act of 2003 (15 U.S.C. §§ 7701-13) on behalf of all persons and entities who qualify as Internet access services under 15 U.S.C. § 7702(11) who received spam at the email addresses of TD AmeriTrade's accountholders which is traceable to TD AmeriTrade breach of its privacy policy.

37. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the both Class members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of either Classes, and Defendant has no defenses unique to Plaintiff.

38. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of either Class will likely be relatively small, especially given the burden and expense of individual prosecution of

the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the members of either Class individually to obtain effective relief from the misconduct of Defendant. Even if members of either Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

39. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to either Class as a whole. The policies of the Defendant challenged herein apply and affect members of both Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

**Allegations to Certification of California Resident Class**

40. **Definition of the California Resident Class:** Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this Complaint against TD AmeriTrade on behalf of himself and all persons who are accountholders of TD AmeriTrade who reside in California. Excluded from the California Resident Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former employees, officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class and 4) the legal representatives, successors or assigns of any such excluded persons.

Class Action Complaint                    10

41.    **California Resident Class Numerosity:** The exact number of California Resident Class members is unknown and is not available to Plaintiff, but it is clear that individual joinder of all Class members is impracticable. In SEC filings, TD AmeriTrade estimated it had 6,191,000 accountholders as of September 2006. According to recent U.S. Census estimates, approximately 12% of the US population resides in California. Assuming that TD AmeriTrade's accountholders are distributed evenly across the US population, there are some 740,000 TD AmeriTrade accountholders residing in California. California Resident Class members can be easily identified through TD AmeriTrade's records.

42.    **California Resident Class Commonality:** Common questions of fact and law exist as to all California Resident Class members and predominate over the questions affecting only individual California Resident Class members. These common questions include:

    (a)    Whether TD AmeriTrade exposed or provided email addresses of the California Resident Class members to spammers;

    (b)    Whether such exposure violated TD AmeriTrade's Privacy Statement;

    (c)    Whether such exposure was intentional or unintentional on TD AmeriTrade's part;

    (d)    Whether TD AmeriTrade's Privacy Statement represented that TD AmeriTrade's services have characteristics, uses, and benefits, or quantities which they do not have, in violation of Cal. Civ. Code § 1770(a)(5);

    (e)    Whether TD AmeriTrade's Privacy Statement represented that TD AmeriTrade's services confer or involves rights, remedies, or obligations which they do confer not or involve, in violation of Cal. Civ. Code § 1770(a)(14);

    (f)    Whether, in light of the exposure and provision of California Resident Class members' email addresses to spammers, TD AmeriTrade's Privacy Statement was deceptive under Cal. Bus. & Prof. Code § 17200;

    (g)    Whether TD AmeriTrade owed the California Class members a fiduciary duty as their broker;

    (h)    Whether TD AmeriTrade owed the California Class members a fiduciary duty by dint of its collection of personal information under the Privacy Statement;

    (i)    Whether TD AmeriTrade breached such fiduciary duties through the violation of its Privacy Statement;

    (j)    Whether TD AmeriTrade failed to fully and accurately disclose the

exposure and provision of California Resident Class members' email addresses to spammers and any underlying security breach;

(k)   Whether, in light of Cal. Civ. Code § 1798.82, TD AmeriTrade's failure to disclose any security breach was unlawful under Cal. Bus. & Prof. Code § 17200;

(l)   Whether, in light of its fiduciary duties, TD AmeriTrade's failure to disclose any security breach violated its fiduciary duties to the California Resident Class members;

(m)   Whether TD AmeriTrade violated the CLRA;

(n)   Whether TD AmeriTrade violated the UCL;

(o)   Whether Plaintiff and the California Resident Class are entitled to relief, and the nature of such relief.

43.   **California Resident Class Typicality:** Plaintiff's claims are typical of the claims of other California Resident Class members, as the Plaintiff and other California Resident Class members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly to the Plaintiff and the public.

## Allegations to Certification of CAN SPAM Class

44.   **Definition of the CAN SPAM Class:** Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this Complaint against TD AmeriTrade on behalf of himself and all persons and entities 1) responsible for receiving email to the email addresses provided to TD AmeriTrade's accountholders, and provide TD AmeriTrade's accountholders access to that email, 2) which received Traced Spam through computers located in the United States. Excluded from the CAN SPAM Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former employees, officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class and 4) the legal representatives, successors or assigns of any such excluded persons.

45.   **CAN SPAM Class Numerosity:** The exact number of CAN SPAM Class members is

unknown and is not available to Plaintiff, but it is clear that individual joinder of all Class members is impracticable. As TD AmeriTrade is an online brokerage service, it stands to reason that some or all of its estimated 6,191,000 accountholders provided it with email addresses. Potential CAN SPAM Class members can be identified by the email addresses contained in TD AmeriTrade's records; membership in the class can be confirmed either by actual production of Traced Spam or can be inferred from the proof of the Traced Spam.

46. **CAN SPAM Class Commonality:** Common questions of fact and law exist as to all CAN SPAM Class members and predominate over the questions affecting only individual CAN SPAM Class members. In addition to the questions which predominate the California Resident Class, these common questions include:

    (a) Whether the CAN SPAM Class members are "Internet access services" under the meaning of 15 U.S.C. § 7702(11);

    (b) Whether Traced Spam constitutes "commercial electronic mail message" under the meaning of 15 U.S.C. § 7702(11);

    (c) Whether Traced Spam's header information was "materially false or materially misleading" under the meaning of 15 U.S.C. § 7704(a)(1);

    (d) Whether TD AmeriTrade's involvement in the provision of its accountholder's email addresses to spammers is such that it "initiate[d] the transmission" of the Traced Spam under the meaning of 15 U.S.C. § 7704(a)(1);

    (e) Whether TD AmeriTrade violated 15 U.S.C. § 7704(a)(1);

    (f) Whether Plaintiff and the CAN SPAM Class are entitled to relief, and the nature of such relief.

47. **CAN SPAM Class Typicality:** Plaintiff's claims are typical of the claims of other California Resident Class members, as the Plaintiff and other California Resident Class members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly to the Plaintiff and the public.

**Class Allegations**

48. **Exposure of Accountholder Email Addresses to Spammers:** TD AmeriTrade has exposed, intentionally or unwittingly, the email addresses of its accountholders to

spammers. There exists a set of spam which is uniquely and exclusively traceable to this exposure.

49. **Privacy Statement:** TD AmeriTrade collected information under its Privacy Statement. Its accountholders entrusted this information to TD AmeriTrade and relied on TD AmeriTrade to keep such information confidential, because TD AmeriTrade was their stock broker, because TD AmeriTrade had a superior knowledge with respect to such information security matters, and because the Privacy Statement urged the accountholders to entrust their personal information to TD AmeriTrade. In light of the exposure above, TD AmeriTrade's Privacy Statement is deceptive and misleading; specifically, whether TD AmeriTrade's Privacy Statement represents that TD AmeriTrade's services have characteristics, uses, and benefits, or quantities which they do not have, and confer or involves rights, remedies, or obligations which they do confer not or involve.

50. **Nondisclosure of Security Breach:** TD AmeriTrade has not affirmatively disclosed the events that led to the exposure of its accountholders' email addresses to spammers. To the extent it has responded to accountholder inquiries about these events, it has deliberately failed to disclose these events fully and accurately.

## Count I: Violation of the CLRA, Cal. Civ. Code § 1770

51. Plaintiff incorporates the above allegations by reference.

52. TD AmeriTrade's Privacy Statement represented that TD AmeriTrade's services have characteristics, uses, and benefits, or quantities which they do not have, in violation of Cal. Civ. Code § 1770(a)(5), namely that TD AmeriTrade would not disclose accountholders' email addresses to third parties.

53. TD AmeriTrade's Privacy Statement represented that TD AmeriTrade's services have confer or involves rights, remedies, or obligations which they do confer not or involve, in violation of Cal. Civ. Code § 1770(a)(14), namely that TD AmeriTrade would not disclose accountholders' email addresses to third parties.

54. Further, TD AmeriTrade continues to violate the CLRA, Cal. Civ. Code § 1770, to the

Class Action Complaint                                        14

extent TD AmeriTrade fails to correct the deception created by the Privacy Statement and its own failure to disclose the events that led to the exposure of its accountholders' email addresses to spammers.

55. TD AmeriTrade's instructions to accountholders to destroy Traced Spam are tantamount spoliation of evidence and also violate the CLRA.

56. Elvey and the other California Resident Class members have sustained injuries from TD AmeriTrade's CLRA violations and will suffer additional injury if these violations continue.

57. Elvey, on his own behalf and behalf of the other California Resident Class members, seeks an order enjoining TD AmeriTrade's CLRA violations alleged herein, restitution of property gained by the CLRA violations (including commissions on trades while actionable failure to disclose information was ongoing), and court costs and attorney's fees under the CLRA (Cal. Civ. Code § 1780(a)).

**Count II: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**

58. Plaintiff incorporates the above allegations by reference.

59. Plaintiff and members of the class paid money to utilize TD AmeriTrade's services as advertised on its website and as provided for in its Privacy Statement.

60. TD AmeriTrade's Privacy Statement was deceptive, and Plaintiff and members of the class did not receive TD AmeriTrade's services as promised.

61. TD AmeriTrade continued failure to correct the deception created by the Privacy Statement and its own failure to disclose the events that led to the exposure of its accountholders' email addresses to spammers is deceptive and unlawful under

62. TD AmeriTrade's instructions to accountholders to destroy Traced Spam are tantamount to spoliation of evidence and are unfair and deceptive.

63. The acts alleged above are unlawful, unfair or fraudulent business acts or practices and constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

64. Elvey and the other California Resident Class members have sustained injuries from TD AmeriTrade's unfair competition and will suffer additional injury if the unfair

Class Action Complaint                                    15

4  competition continues.

5  65.  Elvey, on his own behalf and behalf of the other California Resident Class members,
6  seeks an order enjoining TD AmeriTrade's unfair competition alleged herein, and
7  restitution of property gained by such unfair competition under the UCL ( Cal. Bus. &
8  Prof. Code § 17203).

9  **Count III: Breach of Fiduciary Duty**

10  66.  Plaintiff incorporates the above allegations by reference.

11  67.  TD AmeriTrade owed all California Resident Class members a fiduciary duty.

12  68.  TD AmeriTrade breached its fiduciary duty of confidentiality by allowing the exposure
13  of its accountholder's email addresses to spammers.

14  69.  TD AmeriTrade breached its fiduciary duty of loyalty and duty to inform by 1) its
15  continued failure to correct the deception created by the Privacy Statement, and 2) its
16  failure to disclose the events that led to the exposure of its accountholders' email
17  addresses to spammers, and 3) instructed accountholders to destroy Traced Spam.

18  70.  Elvey and the other California Resident Class members have sustained injuries from TD
19  AmeriTrade's breach of its fiduciary duties.

20  71.  Elvey, on his own behalf and behalf of the other California Resident Class members,
21  seeks damages in an amount to be determined at trial and equitable relief (including an
22  accounting, and disgorgement of profits obtained while the breach of fiduciary duty was
23  ongoing, such as commissions on trades), for TD AmeriTrade's breach of its fiduciary
24  duties.

25  **Count IV: Violation of CAN SPAM Act, 15 U.S.C. § 7704(a)(1)**

26  72.  Plaintiff incorporates the above allegations by reference.

27  73.  Elvey and the other CAN SPAM Class members are "Internet access services" under the
28  meaning of 15 U.S.C. § 7702(11).

74.  The Traced Spam violated 15 U.S.C. § 7704(a)(1).

75.  TD AmeriTrade originated the Traced Spam by providing its accountholder's email
addresses to spammers and thereby initiated the transmission of the Traced Spam.

76. TD AmeriTrade violated 15 U.S.C. § 7704(a)(1).

77. Elvey and the other CAN SPAM Class members have sustained injuries from TD AmeriTrade's violation of 15 U.S.C. § 7704(a)(1) and will suffer additional injury if the unfair competition continues.

78. Elvey, on his own behalf and behalf of the other CAN SPAM Class members, seeks an order enjoining TD AmeriTrade's violations of 15 U.S.C. § 7704(a)(1), statutory damages for each Traced Spam to each CAN SPAM Class member, and reasonable costs, including reasonable attorneys' fees under the CAN SPAM Act (15 U.S.C. § 7706(g)).

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendant as follows:

(a) Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the California Resident Class, the CAN SPAM Class;

(b) With respect to Counts I, II, and III, equitable relief for the California Resident Class, including an order for accounting, an order enjoining the misconduct alleged herein, restitution of property gained by this misconduct and disgorgement of profits obtained while the breach of fiduciary duty was ongoing, such as commissions on trades;

(c) With respect to Count III, damages in an amount to be determined at trial for the California Resident Class;

(d) With respect to Count IV, an injunction against further violations of CAN SPAM, statutory damages for each Traced Spam to each CAN SPAM Class member, and reasonable costs, including reasonable attorneys' fees under the CAN SPAM Act, for the CAN SPAM Class;

(e) Awarding pre- and post-judgment interest; and

(f) Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: May 31, 2007

By:_____/S/_____

1.

2

3

4 Alan Himmelfarb
LAW OFFICES OF ALAN
5 HIMMELFARB
2757 Leonis Blvd
6 Los Angeles, CA 90058
Telephone: (323) 585-8696
7 Fax: (323) 585-8198
consumerlaw1@earthlink.net

8 Scott A. Kamber
Ethan Preston
9 KAMBER & ASSOCIATES, LLC
11 Broadway, 22d Floor
10 New York, NY 10004
Telephone: (212) 920-3072
11 Fax: (212) 202-6364
skamber@kolaw.com
12 epreston@kolaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint 18