Gretchen M. Nelson (112566)
KREINDLER & KREINDLER LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, CA  90017
Telephone:  213-622-6469
Telecopier:  213-622-6019
Email:  gnelson@kreindler.com

Howard Strong, Esq. (069641)
Law Offices of Howard Strong
P.O. Box 570092
Tarzana, CA  91357-4031
Telephone: (818) 343-4434
Telecopier: (818) 343-7910
Email:  stronglaw@gmail.com

*Attorneys for Richard Holober,*
*individually and on behalf of the class*
See Signature Page for Names of Additional Plaintiffs' Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| IN RE: TD Ameritrade Account Holder Litigation, <br><br> This Document Relates to All Actions | Master File No. C-07-2852 SBA <br><br> CLASS ACTION <br><br> **PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF CLASS SETTLEMENT** <br><br> Date:  April 19, 2011 <br> Time:  1:00 p.m. <br> Place: Courtroom of the Honorable Saundra Brown Armstrong |

# TABLE OF CONTENTS

Page

I.      SUMMARY OF THE SETTLEMENT AND OBJECTIONS ............................................ 1

II.     ARGUMENT ......................................................................................................... 3

        A.      The Reaction of Class Members to the Settlement Provides Strong
                Evidence that the Settlement is Fair, Reasonable and Adequate .......................... 3

                1.      The Objections that the Settlement Fails to Provide Monetary Relief
                        For Excessive Spam or Future Identity Theft – Objections by M. Blum
                        And Kassim M. Ferris .............................................................................. 5

                2.      Objections that State No Reason for The Objection Or Are
                        Otherwise Unclear on the Basis for the Objection– Stanley Teich
                        (Docket Nos. 259), Jeff Rubino (Docket No. 269) Charles F. Orelli
                        (Docket No. 270) and William Lytran (Docket No. 272) ........................ 6

                3.      Objections that the Case Lacks Merit – Lynn O. Lamy (Docket No. 244)
                        Thomasine V. Phillips (Docket No. 252), Timothy C. Ray
                        (Docket No. 253), Hon. Guy E. Taylor (Docket No. 254) and
                        Ana R. Torres (Docket No. 265)………………………………………..…..8

                4.      Objections that the Claims Process is Too Onerous – Objections of
                        Conrad Lohutko and Steven T. Greeran (Docket No. 275)……………….9

                5.      Objections that the Settlement Fails to Provide Sufficient
                        Monetary Relief for Identity Theft or That the Settlement Fails
                        to Provide Relief for Injuries Resulting from the Purchase of
                        Penny Stock – Objections of Bonnie Elaine Diskand; Frank Catapano
                        (Docket No. 271) and Jack Simke (Docket No. 267)……………………11

                6.      The Objections Raised by Matthew Elvey………………………………13

                        i.      The Procedural History……………………………………….......13

                        ii.     Mr. Elvey Objected to the Pending Settlement At the
                                Preliminary Approval Hearing…………………………………14

                        iii.    Mr. Elvey's Objections to Final Approval of The Settlement……17

III.    CONCLUSION…………………………………………………………………..18

1

2

# TABLE OF AUTHORITIES

Page

3

4

*Bell v. Acxiom Corp.*,
    Case No. 06cv485 WRW, 2006 WL 2850042 (E.D. Ark. October 3, 2006).................6

5

*Boyd v. Bechtle Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979)...........................................................................4

6

7

*Burgess v. Eforce Media, Inc.*,
    No. 1:07cv231, 2007 WL 3355369 (E.D.N.C. Nov. 9, 2007)................................5

8

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
    580 F.Supp.2d 273 (S.D. N.Y. 2008).....................................................................6

9

10

*Cherny v. Emigrant Bank*,
    604 F.Supp.2d 605 (S.D. N.Y. 2009)..................................................................5, 6

11

*Churchill Village v. General Electric*,
    361 F.3d 566 (9th Cir. 2004)..................................................................................4

12

13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................................7

14

*Dewey v. Volkswagen of America*,
    738 F.Supp.2d 546 (D. N.J. 2010)..........................................................................8

15

16

*Ehrheart v. Verizon Wireless*,
    609 F.3d 503 (3d Cir. 2010)................................................................................8-9

17

18

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980)...............................................................................4

19

*Faigman v. AT&T Mobility LLC*,
    Slip Opinion 2011 WL 672648 (N.D. Cal. Feb. 16, 2011)....................................3

20

21

*Forbes v. Wells Fargo Bank, N.A.*,
    420 F.Supp.2d 1018 (D. Minn. 2006).....................................................................6

22

*Giordano v. Wachovia Securities LLC*,
    Civil No. 06-276 (JBS), 2006 WL 2177036 (D. N.J. July 31, 2006).....................6

23

24

*Gordon v. Virtumundo, Inc.*,
    No. 06-0204, 2007 WL 1459395  (W.D. Wash. May 15, 2007).............................5

25

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009).................................................................................6

26

*Guin v. Brazos Higher Educ. Service Corp., Inc.*,
    2006 WL 288483 (D. Minn. 2006)..........................................................................6

27

28

*In re Domestic Air Transportation Antitrust Litig.*,
    141 F.R.D. 534 (N.D. Ga. 1992)...........................................................................16

      MASTER FILE NO. C-07-2852 SBA

PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF CLASS SETTLEMENT

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)……………………………………………………………3, 5

*Key v. DSW, Inc.*,
    454 F.Supp.2d 684 (S.D. Ohio 2006)……………………………………………………..6

*MWS Wire Indus., Inc. v. California Fine Wire Co.*,
    797 F.2d 799 (9th Cir. 1986)………………………………………………………………3

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003)………………………………………………………………3

*Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)…………………………………………………………4

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
    688 F.2d 615(9th Cir. 1982)………………………………………………………………3

*Pallas v. Pacific Bell*,
    No. C-89-2373 DLJ, 1999 WL 1209495 (N.D.Cal. July 13, 1999)………………………..5

*Pisciotta v. Old Nat'l Bancorp*,
    499 F.3d 629 (7th Cir. 2007)……………………………………………………………..6

*Randolph v. ING Life Ins. & Annuity Co.*,
    973 A.2d 702 (D.C. 2009)…………………………………………………………………6

*Ruiz v. Gap, Inc.*,
    622 F.Supp.2d 908 (N.D. Cal. 2009)……………………………………………………..6

*Shafran v. Harley-Davidson, Inc.*,
    No. 07 Civ. 01365, 2008 WL 763177 (S.D. N.Y. Mar. 20, 2008)…………………………6

*Smith v. Chase*,
    293 A.D. 2d 598, 741 N.Y.S.2d 100 (2d Dept. 2002)……………………………………..5

*Stollenwerk v. Tri-West Healthcare Alliance*,
    Case No. 08-185PH, 2005 WL 2465906 (D. Ariz. September 6, 2005)
    *aff'd in part, rev'd in part on other grounds*, 254 Fed.Apx. 664 (9th Cir. 2007)………….6

*United States v. McInnes*,
    556 F.2d 436 (9th Cir. 1977)………………………………………………………………3

*Wilson v. Airborne, Inc.*,
    2008 WL 3854963 (C.D. Cal. Aug. 13, 2008)……………………………………………4

**STATUTES AND RULES**

Controlling the Assault of Non-Solicited Pornography and Marketing Act, 15 U.S.C. § 7701…5,6
Class Action Fairness Act. 28 U.S.C. § 1711………………………………………………...1
Federal Rule of Civil Procedure 23………………………………………………...*passim*

MASTER FILE NO. C-07-2852 SBA

AMECURRENT 700049626.1 03-Apr-11 11:49

1
2

# TABLE OF AUTHORITIES
## (continued)

3

**Page**

4

**OTHER AUTHORITIES**

5

Federal Trade Commission, 2006 Identity Theft Survey (Nov. 2007)…………………………...11

6

*Identity Theft: Prevalence and Cost Appear to be Growing,*
United States General Accounting Office, GAO-02-363 (March 2002)…………………………11

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MASTER FILE NO. C-07-2852 SBA

AMECURRENT 700049626.1 03-Apr-11 11:49

Plaintiffs Richard Holober and Brad Zigler respectfully submit this memorandum in response to objections that have been received and/or filed to the motion for final approval of a class action settlement achieved in this litigation.

## I.  SUMMARY OF THE SETTLEMENT AND OBJECTIONS

The terms of this class action settlement have been described in detail in plaintiffs' motion for final approval of the settlement.  Under the settlement, TD Ameritrade will pay claims up to a total of $6.5 million to members of the class who have suffered an identity theft.  The settlement further provides that in no event will TD Ameritrade pay less than $2.5 million in settlement.  In the event that the total amount of the claims are less than $2.5 million, any difference in the total claim amount (coupled with any amount awarded as fees and costs to counsel for plaintiffs) and $2.5 million will be paid in equal portions to 5 non-profit organizations that work in the area of electronic privacy.  In addition to the cash benefits for class members who suffered identity theft, the settlement provides that TD Ameritrade will retain an independent evaluator to assess whether the Company has met certain information technology security standards set forth in the Settlement Agreement, and TD Ameritrade will promptly act to correct any areas of non-compliance that are identified during the evaluation.  In return for these benefit, class members will release their claims against TD Ameritrade.

Notice of the settlement was provided in accordance with the Court's Order, dated December 20, 2010.  The Notice informed Settlement Class Members that objections were to be *filed* with the Court by March 15, 2011, with copies sent to counsel for Plaintiffs and the Defendant.[1]  In addition, pursuant to the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1711 *et seq*., notice disclosing the terms of the settlement was provided to the Attorney General's Offices of the fifty states, the District of Columbia and Puerto Rico.  There have been no objections raised to the settlement by any Attorney General.

---

[1]  The Court's December 20, 2010 Order provided that objections were to be postmarked by March 15, 2011.  Accordingly, we address in this memorandum all objections postmarked by March 15, 2011.

A number of documents have been filed requesting exclusion, filing claims, or otherwise informing the Court of misdirected mail or merely requesting notice in the case.  The documents that have been filed with the Court which are nothing more than requests for exclusion are Docket Nos. 248, 249, 250, 251, 255, 257, 258, 260, 261, 263, 264, 268, 273, 274, 276, 277, 279, 280, 281, 282 and 283.  The claim forms that have been filed are Docket Nos. 256 and 262.[2]  In addition, one document (Docket No. 278) is a letter from a class member who after filing a request for exclusion was apparently sent a letter from the U.S. Copyright Office in error.  Another document is merely a notice that the postcard notice was sent in error to the wrong address (Docket No. 266).  And, one document is merely a request for notices in connection with the case (Docket No. 259.)  Since none of the foregoing voice any objection to the settlement, no response is necessary.

There are three documents (Docket Nos. 252, 253 and 254), that have been filed voicing objections and at the same time requesting exclusion.  Pursuant to the Settlement Agreement and the Notice, any class member who objects and also seeks exclusion will be treated as an objector.[3]  The foregoing objections and the objections stated in Docket Nos. 244, 265, 267, 269, 270, 271, 273, 275 and 288 will be addressed below along with additional objections which have to date not been reported on the docket but which have been submitted by the following class members:  M. Blum; Bonnie Elaine Diskand and Conrad Lohutko.

The objections fall into a limited number of categories.  In general these categories include objections that the settlement fails to provide relief for receipt of spam or fails to provide payment for future unknown identity theft and otherwise is insufficient to curb the actions that are alleged in the complaint; the claims process is too onerous because it requires that class members present some form of proof of identity theft; the settlement fails to provide sufficient relief for identity theft incurred by certain class members or fails to provide relief for class members who

---

[2]  Copies of these claim forms have been forwarded to the Claims Administrator.

[3]  A few of the individuals who objected and requested exclusion have been identified on the list appended to the Declaration of Jeannine Andreis Re Request for Exclusions Received, filed March 24, 2011.  A revised list identifying those who have timely and validly requested exclusion will be filed with the Court prior to the hearing on final approval.

MASTER FILE NO. C-07-2852 SBA

1   may have purchased penny stock touted in spam email; or the settlement is unfair because class

2   counsel will purportedly receive excessive fees and costs and the lawsuit is otherwise frivolous.

3        As we show below, the objections that have been raised to the settlement fail to establish

4   any reason to deny final approval to a settlement that was achieved under the guidance of an

5   experienced jurist.

6   **II.    <u>ARGUMENT</u>**

7        There is a strong policy favoring compromises that resolve litigation, in particular

8   complex litigation such as the class action that is before this Court.  *MWS Wire Indus., Inc. v.*

9   *California Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986) ("There is an overriding public

10  interest in settling and quieting litigation" quoting *United States v. McInnes*, 556 F.2d 436, 441

11  (9th Cir. 1977); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d

12  Cir. 1995) (settlements are favored "particularly in class actions and other complex cases where

13  substantial judicial resources can be conserved by avoiding formal litigation").

14       Federal Rule of Civil Procedure 23(e)(2)  requires that the court determine whether a

15  proposed settlement is "fair, reasonable and adequate."  "The court's inquiry into a consensual

16  agreement negotiated by the parties should seek only to ensure that the settlement is fair,

17  reasonable and adequate and not the result of fraud, over-reaching or collusion."  *Faigman v.*

18  *AT&T Mobility LLC*, Slip Opinion 2011 WL 672648 *2 (N.D. Cal. Feb. 16, 2011), citing *Officers*

19  *for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

20       We have addressed the factors that the Court should consider in determining whether to

21  grant final approval of this settlement.  Since the motion for final approval was presented prior to

22  the deadline for the filing of objections, in this brief we address the few objections that have been

23  voiced to the settlement.

24       **A.    The Reaction of Class Members to the Settlement Provides Strong Evidence
             That the Settlement is Fair, Reasonable and Adequate.**

25

26       In deciding whether a class settlement is fair, reasonable and adequate to the class, the

27  courts give strong consideration to the reaction of the class to the proposed settlement.  *Molski v.*

28  *Gleich,* 318 F.3d 937, 953 (9th Cir. 2003).  "It is established that the absence of a large number of

1    objections to a proposed class action settlement raises a strong presumption that the terms of a

2    proposed class action settlement are favorable to the class members." *Nat'l Rural*

3    *Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004).

4        Here, the court-approved procedures resulted in the notice being transmitted, either

5    electronically and/or by mail to more than 6,000,000 class members.  A total of 339 have

6    requested exclusion from the class.  (Declaration of Jeannine Andreis Re:  Request for Exclusion

7    Received, filed March 24, 2011 at p. 1.)  The small fraction (.000056%) of the total class who

8    have requested exclusion weighs heavily in favor of approval of the settlement.  *Wilson v.*

9    *Airborne, Inc.*, 2008 WL 3854963, at *7 (C.D. Cal. Aug. 13, 2008) (class settlement approved

10   where 230 timely exclusion requests were received out of a class of 282,717 class members);

11   *Churchill Village v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of

12   settlement with 500 opt-outs from a class of approximately 90,000).

13       In addition, there are only 15 class members who have voiced any objection to the

14   settlement – objections which as discussed below include individuals whose only objection is that

15   they believe the lawsuit "is wholly frivolous and nothing more than an attempt to shake down the

16   defendant."  Docket No. 254.[4]  The limited number of objections (.0000025% - far less than 1%

17   of the class) weighs heavily in favor of approval of the settlement.  *Ellis v. Naval Air Rework*

18   *Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) (only three out of 2,500 class members who filed

19   objections shows an "overwhelming sentiment of the class in favor of the [d]ecree, a factor which

20   provides strong support for the fairness of its terms"); *Boyd v. Bechtle Corp.*, 485 F. Supp. 610,

21   624 (N.D. Cal. 1979) (objections from only 16 percent of the class was persuasive evidence that

22   the settlement was adequate).

23       A finding of fairness, adequacy and reasonableness does not require that there be no

24   objections.  Rather, consideration is given to the number of objections filed as well as the nature

25

26   _____

     [4]  In contrast, the prior settlement in this litigation generated the filing of 44 objections – 3 times
27   the number that this settlement generated, including objections raised by Matthew Elvey, who has
     objected to this settlement, for amongst other things the same reasons he previously objected.
28   Docket No. 288, at p. 2.

MASTER FILE NO. C-07-2852 SBA

of the objections. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, *supra,* 55 F.3d at 812 ("In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors"); *Pallas v. Pacific Bell*, No. C-89-2373 DLJ, 1999 WL 1209495, at \*6 (N.D.Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness").

Here, the exceedingly small number of and limited nature of the objections strongly support approval of the settlement.

**1.    The Objections That the Settlement Fails to Provide Monetary Relief for Excessive Spam or Future Identity Theft– Objections by M. Blum and Kassim M. Ferris.[5]**

M. Blum objects to the settlement on the grounds that the settlement provides no monetary relief for those who received large amounts of spam email subsequent to the data breach.  Kassim M. Ferris objects to the settlement on the grounds that it fails to provide relief for future identity theft.

The settlement does not provide monetary relief for those suffering from spam because, to date, the courts have declined to provide monetary relief for those who have simply suffered from excessive amounts of unsolicited emails.  In *Cherny v. Emigrant Bank*, 604 F.Supp.2d 605 (S.D. N.Y. 2009), the court dismissed a class action complaint where, among other things, the plaintiff alleged that the bank's disclosure of customer email addresses resulted in his receipt of excessive spam.  In so ruling, the court noted that "[t]he receipt of spam by itself, however, does not constitute a sufficient injury entitling [plaintiff] to compensable relief."  *Id*., at 609, citing *Burgess v. Eforce Media, Inc.*, No. 1:07cv231, 2007 WL 3355369, at \*6 (E.D.N.C. Nov. 9, 2007); *Gordon v. Virtumundo, Inc.*, No. 06-0204, 2007 WL 1459395, at \*8 (W.D. Wash. May 15, 2007); *Smith v. Chase*, 293 A.D. 2d 598, 741, N.Y.S.2d 100, 102 (2d Dept. 2002).

Further, although plaintiffs  initially asserted a claim for relief under the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act"), 15 U.S.C. §

---

[5]  Copies of these objections were mailed to Class Counsel and Defendant's Counsel.  There is no record that they have been filed with the Court.

MASTER FILE NO. C-07-2852 SBA

7701, *et seq.*, the courts have held that only providers of Internet access service have standing to pursue a claim and to seek the statutory remedies available under that act. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1052 (9th Cir. 2009). The absence of a legal claim for damages arising from the receipt of spam demonstrates why the settlement does not provide monetary relief for those who suffered from unwanted spam.

Further, the cases are generally in accord that the risk of future identity theft is not a cognizable injury for which relief can be granted. *See, e.g., Ruiz v. Gap, Inc.*, 622 F.Supp.2d 908 (N.D. Cal. 2009) (although a job applicant had standing to bring a suit for potential identity theft arising from the theft of a laptop which contained personal information of the applicant and others, the claims were subject to dismissal on summary judgment because the job applicant's increased risk of future identity theft did not rise to the level of appreciable harm); *Stollenwerk v. Tri-West Healthcare Alliance*, Case No. 08-185PH, 2005 WL 2465906 (D. Ariz. September 6, 2005) same, *aff'd in part, rev'd in part on other grounds*, 254 Fed.Apx. 664 (9th Cir. 2007); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702 (D.C. 2009); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007); *Guin v. Brazos Higher Educ. Service Corp., Inc.*, 2006 WL 288483 (D. Minn. 2006); *Forbes v. Wells Fargo Bank, N.A.,* 420 F. Supp. 2d 1018 (D. Minn. 2006); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F.Supp.2d 273 (S.D. N.Y. 2008); *Cherny v. Emigrant Bank*, *supra*, 604 F.Supp.2d 608-09; *Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365, 2008 WL 763177, at *3 (S.D. N.Y. Mar. 20, 2008).[6]

> **2.    Objections that State No Reason for The Objection Or Are Otherwise Unclear on the Basis for the Objection– Stanley Teich (Docket Nos. 259), Jeff Rubino (Docket No. 269) Charles F. Orelli (Docket No. 270) and William Lytran (Docket No. 272)**

There are two objections that fail to state the basis for the objection. They are the objections of Jeff Rubino (Docket No. 269) and Charles F. Orelli (Docket No. 270). Mr. Rubino

---

[6] Other courts have found that a plaintiff lacks standing to even assert a claim as to future identity theft. *Giordano v. Wachovia Securities LLC*, Civil No. 06-276 (JBS), 2006 WL 2177036 (D. N.J. July 31, 2006); *Key v. DSW, Inc.*, 454 F.Supp.2d 684 (S.D. Ohio 2006); *Bell v. Acxiom Corp.*, Case No. 06cv485 WRW, 2006 WL 2850042 (E.D. Ark. October 3, 2006).

merely states that he "objects to the actions of TD Ameritrade in case No. C-07-2852 VRW."[7]
Mr. Orelli voices many statements regarding his receipt of the notice of settlement, his having
been victimized by identity theft and ensuing bad credit reports, but does not appear to state any
objection to the settlement.[8]  The failure to articulate any reason for their objection provides
sufficient grounds to decline to consider these objections.

Stanley Teich (Docket No. 259), simply requests that he be provided copies of any notices
in the case.  No objection is stated.

And, William Lytran in Docket No. 272, appears to be informing the Court of the
circumstances of identity theft that he suffered.  His comments seem to be in the nature of a claim
rather than an objection.  We have forwarded the document to the Claims Administrator.  To the
extent that the document seems to reflect a concern that Mr. Lytran's losses are greater than the
settlement will afford him, similar objections are addressed below in Section A.5.

The notice of this settlement informed class members that "[a]ny objection must include
your name and address, telephone number and a statement of the reasons why you believe that the
Court should find that the proposed Settlement is not fair or is not in the best interests of the
Settlement Class.  You must also submit proof of class membership."  Notice of Proposed Class
Settlement, at p. 4.  These objections should be rejected since they fail to state any reason why the
Court should not find the settlement fair, reasonable or adequate.  See *City of Detroit v. Grinnell
Corp.*, 495 F.2d 448, 464 (2d Cir. 1974) (noting that objections that are based on unsupported
suppositions were inadequate to disrupt a settlement).

---

[7]  The objection is somewhat of an enigma and could be interpreted simply to mean that Mr.
Rubino is upset with the actions of TD Ameritrade as alleged in the Complaint.  If that is so, the
objection is not directed to the settlement.

[8]  Although difficult to discern, it may be that the objector is seeking to have the Claims
Administrator consider the issues presented in the objection as a claim for recovery.  The Claims
Administrator has been informed of this class member's objection and will follow up with him.

3.     **Objections that the Case Lacks Merit – Lynn O. Lamy (Docket No. 244), Thomasine V. Phillips (Docket No. 252), Timothy C. Ray (Docket No. 253), Hon. Guy E. Taylor (Docket No. 254) and Ana R. Torres (Docket No. 265).**

There are five objectors who are opposed to the settlement because they do not believe that the claims have any merit.  For example, Lynn O. Lamy states that she believes "this claim to be unjustified, frivolous and fostered by opportunistic shysters with a low sense of morality." Docket No. 244.  And, Timothy C. Ray states: "I have not been 'harmed' as suggested in this proposed settlement therefore I do not believe that Ameritrade is guilty of this claim.  It would be wrong for me, and others, to profit from this lawsuit."  Docket No. 253.  The objector proceeds to assert concerns that he will be "indirectly harmed" if the settlement is approved as a result of the "associated legal costs."  *Ibid*.  Similarly, Thomasine V. Phillips objects on the grounds that she "want[s] to be released from all attorneys' fees and costs."  Docket No. 252.  The Honorable Guy E. Taylor (an Administrative Law Judge) states that "this lawsuit is wholly frivolous and nothing more than an attempt to shake down the defendant."  Docket No. 254.  And, Ana R. Torres voices her opinion that "it appears that some greedy Lawyers have found a reason and person upset enough to know that the emails MAY have been compromised" and that ultimately the "lawyers will Get $4million and the plaintiffs split $2 Million amongst 1 million plaintiffs (not sure how many) so we get $2."  Docket No. 265.  The objector then opines that it is "lawsuits like this that ends up hurting the consumer more because the cost of that law suit will have to be passed on to the client."  *Ibid*.

The foregoing objections are, among others, the type of objection raised by a defendant in an effort to avoid liability.  As the court in *Dewey v. Volkswagen of America*, 728 F.Supp.2d 546 (D.N.J. 2010) remarked in rejecting similar objections to final approval of a class action settlement:

> The Court's obligation when evaluating a class settlement is not to protect the defendants but rather "to ensure that other unrepresented parties (absent class members) and the public interest are fairly treated by the settlement reached between the class representatives and the defendants."

728 F.Supp.2d at 576, quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 503, 594 (3d Cir. 2010).

- 8 -

1    The defendant in this litigation has been well and ably represented by highly experienced

2    counsel.  The defendant has had every opportunity to protect its interests and has voluntarily

3    agreed to the settlement.  Objections that seek to protect the defendant as opposed to the class

4    should not be given substantial credence in establishing whether the settlement is fair, reasonable

5    and adequate.

6    Moreover, objections that incorrectly state the facts of the settlement and argue against

7    alleged excessive attorneys' fees or attack plaintiffs' counsel for having filed the action in the first

8    place, fail entirely to aid this Court in its decision.  For example, the objection that the class

9    members will receive only $2 and class counsel will receive $4 million is simply incorrect.  In

10   this case, class counsel have agreed to limit any fee and cost award to $500,000.  Moreover, they

11   have further agreed to waive any fee and cost award in the event that the claims equal or exceed

12   the settlement cap of $6.5 million.  The efforts by class counsel to ensure the maximum recovery

13   to the class can hardly be considered the actions of "greedy lawyers."  Indeed, Judge Walker in

14   his December 20, 2010 Order granting preliminary approval of this settlement, expressed concern

15   that as a result of the terms of the settlement, counsel may not receive any fees in the case.  See

16   December 20, 2010 Order, at p. 9.

17              **4.      Objections that the Claims Process is Too Onerous – Objections of
                          Conrad Lohutko and Steven T. Greeran (Docket No. 275).**

18   Two objections have been submitted that complain that the claims process is too onerous

19   and requires the submission of documentation of identity theft that may not have been retained by

20   the class members.  These are the objections of Conrad Lohutko and Steven T. Greeran (Docket

21   No. 275).

22   The settlement provides the payment of $50 in the event that a class member suffered

23   identity theft as to an existing credit or debit card.  The settlement also provides for the payment

24   of $250 for identity theft in an account other than an existing credit or debit card and in addition

25   up to $1,000 (including the $250) for out of pocket expenses and up to $2,500 (including the

26   $1,000 and $250) for any unreimbursed losses.  The claim form advises class members that some

27   form of proof is required to support the claim of identity theft.  The rationale for this is obvious –

28

MASTER FILE NO. C-07-2852 SBA

it is to provide corroboration for the claim of identity theft and to ensure that valid claims are being filed.

However, the claim form further informs the class that strict compliance with the request that certain types of document be provided is not necessary and that the Claims Administrator will give consideration to other types of supporting documentation.  Specifically the claim form provides:

> You should provide to the Claims Administrator a copy of any police report or other report to a government agency such as the FTC or the FBI or U.S. Postal Service or a letter or affidavit from a credit card company or bank or other creditor stating that account charges were fraudulent due to identity theft.  If you are unable to provide the type of documentation described above, but are able to provide to the Claims Administrator another type of documentation that shows you were a victim of identity theft, the Claims Administrator will consider other documentation you provide.  However, *your claim is more likely to be approved if you are able to submit to the Claims Administrator a police report or other report to a government agency such as the FTC or a letter or affidavit from a credit card company or other creditor stating that account charges were fraudulent due to identity theft.*

Docket No. 227, Exhibit F to Class Action Settlement Agreement (emphasis in original).

Thus there is no factual support for Mr. Lohutko's objection that the "other forms of proof as to a class members damages should be allowed."  As noted above, the Claims Administrator will give consideration to such other forms of proof.

To the extent that Mr. Greeran's objection that he has "no supporting document or unauthorized transactions on my statements" means that he has suffered from identity theft but has no supporting documentation, the claim form informs him to submit any other documentation that would support his claim.  Alternatively, to the extent Mr. Greeran's objection is that he has not been the victim of identity theft but believes that he should be entitled to monetary payment as part of the settlement, the arguments set forth in Section A.1 above, show why Mr. Greeran is not entitled to monetary payment.

**5.      Objections that the Settlement Fails to Provide Sufficient Monetary Relief for Identity Theft or That the Settlement Fails to Provide Relief for Injuries Resulting from the Purchase of Penny Stock – Objections of Bonnie Elaine Diskand; Frank Catapano (Docket No. 271) and Jack Simke (Docket No. 267)**

Bonnie Elaine Diskand objects to the settlement because she does not believe that the settlement provides sufficient monetary relief for the identity theft that she suffered including the emotional distress and medication expenses that she has incurred.  Based on the information provided in her objection it would appear that Ms. Diskand is entitled to file a claim seeking the $250 settlement amount and in addition would be entitled to seek recovery up to $1,000 (including the $250) for her out of pocket expenses.  However, she believes that this is insufficient to compensate her for her losses.

These objections fail to take into account that a settlement represents a compromise.  As discussed in plaintiffs' opening brief, most courts that have addressed similar data breach class actions on the merits have dismissed plaintiffs' claims.  In addition, an individual bringing a claim against TD Ameritrade for actual identity theft would have to prove that the identity theft was caused by the data breach, a significant evidentiary burden.  Under the settlement, class members do not have to carry that heavy burden to be entitled to compensation.  For these reasons and others stated in this brief and in plaintiffs' opening brief, we firmly believe that the settlement is reasonable in light of the issues that exist with respect to the merits of plaintiffs' claims.

In any event, the limits proscribed by the settlement for recovery by class members find support in surveys conducted regarding the general scope of damage suffered by victims of identity theft.  *See* Federal Trade Commission, 2006 Identity Theft Survey (Nov. 2007) at pp. 4 and 38 (noting that "the average victim loss was $371 and that "more than three quarters (80%) of victims in the Existing Credit Cards Only category paid no out-of-pocket expenses, compared to 37% for victims in the New Accounts & Other Frauds category and 54% for the Existing Non-Credit Card Accounts category"); *Identity Theft: Prevalence and Cost Appear to be Growing*, United States General Accounting Office, GAO-02-363 (March 2002) at pp. 56-57 (for the period 1999 to 2001 out of a total of 94,100 complaints, 2,633 (2.8%) reported a monetary loss with

MASTER FILE NO. C-07-2852 SBA

1    1,554 (1.6%) reporting losses under $1,000 and 1,079 (1.2%) reporting losses in excess of

2    $1,000.  That the losses are generally within the foregoing limits is not surprising given the legal

3    limits imposed on financial institutions in seeking recovery for identity theft from the victim.

4         Any class member whose damages exceed the limits set by this settlement retained the

5    right to opt out of the class action and to pursue his or her claims independent of this litigation.

6         In addition, Mr. Catapano (Docket No. 271) appears to object to the settlement on the

7    grounds that it fails to provide compensation for losses he suffered as a result of investing in

8    penny stocks.[9]  To the extent that Mr. Catapano's investment is somehow related to receipt of

9    spam, establishing a causal link between the spam and losses on the transaction will present

10   serious challenges.  It is highly unlikely that Mr. Catapano would have ever recovered for these

11   losses in this litigation given the nature of the claim and significant argument that there was a

12   break in any causal link between the actions of TD Ameritrade and Mr. Catapano's decision to

13   purchase penny stock.

14        Mr. Simke's objection (Docket No. 267) is one that is based on his belief that the relief is

15   insufficient to curb  TD Ameritrade's conduct  towards its customers.  The settlement requires

16   that, in addition to paying claims of up to $6.5 million, TD Ameritrade also retain at its expense

17   an independent data security expert to evaluate whether TD Ameritrade is in compliance with the

18   security standards incorporated in the Settlement Agreement and promptly remedy any non-

19   compliance.  Thus, contrary to Mr. Simke's objection, the settlement does provide for a review

20   that will ensure that there exist or will exist safeguards to prevent a future occurrence.

21        In addition, TD Ameritrade has borne the cost of administration for this settlement as well

22   as the prior settlement.  The Company will have expended millions of dollars in defending and in

23   settling this litigation, which has been ongoing since 2007.  It is likely that this experience (and

24   the significant monetary expenditures that it has and will incur) coupled with the public relations

25   impact that resulted from the disclosure of the data breach, has had a sufficient impact both

26

27   [9]  The basis for Mr. Catapano's objection is not entirely clear.  We believe that he is objecting that
     he cannot seek recovery for losses associated with trades in penny stock of BTCO.

28

financially and otherwise to reinforce for TD Ameritrade the importance of security for its customers' personal information.

### 6.       The Objections Raised by Matthew Elvey

#### i.       The Procedural History

This lawsuit was originally filed by Matthew Elvey on May 31, 2007.  Docket No. 1.  On May 30, 2008, a class action settlement was presented by plaintiffs including Mr. Elvey and another plaintiff Gadgetwiz.com, Inc. for preliminary approval.  Docket No. 53.  On June 12, 2008, at the hearing on preliminary approval, Mr. Elvey appeared and objected to the settlement, claiming that the benefits were "trivial" and that he was "threatened" into signing the settlement agreement.  Order, dated June 13, 2008 (Docket No. 61, at p. 3.)

As a result of, among other things, Mr. Elvey's objections, the Court denied preliminary approval without prejudice.  Mr. Elvey then retained counsel, Mark Chavez of Chavez and Gertler and Gregory Beck of Public Citizen.  A response to the June 13, 2008 Order was field by Mr. Elvey through his counsel.  Docket No. 73.  And, TD Ameritrade also filed a response to the June 13, 2008 Order.  Docket No. 74.  The hearing on preliminary approval was then reset to October 7, 2008.  Docket 84.

Following the submission of additional documents, on March 1, 2009, the Court granted preliminary approval to the settlement.  Docket No. 93.  Notice was then given to the class in accordance with the Court's Order.  *Ibid*.

On July 9, 2009, Mr. Elvey through his counsel filed a memorandum in opposition to the proposed class settlement.  Docket No. 152.  And, on July 13, 2009, Mr. Elvey personally filed a letter "vehemently objecting to the preliminary proposed settlement." Docket No. 163.

On October 23, 2009, the Court issued its Order denying final approval to the proposed class settlement.  Docket No. 189.  In addition, the Court expressed interest in having counsel for Richard Holober, who also had objected to the prior settlement, assume responsibility for the prosecution of the case.  *Id*., p. 12-13.

MASTER FILE NO. C-07-2852 SBA

Thereafter, at the parties' request the Court referred the matter to Magistrate Judge Spero for further settlement discussions.  At a mediation conducted by Magistrate Judge Spero, a settlement in principle was achieved.  Mr. Elvey and his counsel, Jonathan Gertler were present at the mediation.  Although they did not participate in the negotiations conducted in chambers with Magistrate Judge Spero, they were continually informed of the progress of the negotiations.

Following the mediation, the parties worked to finalize all terms of the settlement as well as the settlement documents.  During this period, Mr. Elvey and his counsel were also updated on the progress of those discussions.

On August 16, 2010, counsel for Mr. Elvey filed a motion to withdraw as his counsel and represented therein that due to irreconcilable differences, their further effective representation was impossible.  Docket No. 213, at pp. 1 and 3.  On August 25, 2010, the Court granted the motion to withdraw.  Docket No. 216.

### ii.    Mr. Elvey Objected to the Pending Settlement At the Preliminary Approval Hearing

At the hearing on preliminary approval, Mr. Elvey appeared and orally announced his objections to the settlement.[10]  The objections that he raised (and plaintiffs' responses to those objections) are set forth below:

- **Elvey Objection:**  Most of Mr. Elvey's objections are variations on the theme that the settlement allegedly does not provide a complete remedy for the data breach.

    **Plaintiffs' Response:**  As discussed above, there is substantial uncertainty whether the class could achieve any remedy if plaintiffs' claims were fully litigated on the merits.  A settlement is a compromise, and this settlement is a fair and reasonable compromise in light of the merits of the case.

- **Elvey Objection:**  Mr. Elvey asserts that the settlement provides "no discernable benefit to the class because it fails to provide monetary relief for those who did not suffer identity

---

[10]  Mr. Elvey endeavored to electronically file his objections but was not able to do so.  His written objections which mirror his statements in court were thereafter filed.  Docket No. 237.

MASTER FILE NO. C-07-2852 SBA

theft or "account-based identity theft, i.e. someone who may have a criminal record due to being impersonated by an arrestee, or those who suffered spam and may have also fallen victim to the touting of penny or other stocks."  Docket No. 237, at pp. 2-3.

> **Plaintiffs' Response:**  These arguments are addressed in sections A.1 and A.5 above.

- **Elvey Objection:**  The settlement fails to require that TD Ameritrade adopt "any new [permanent] [sic] security measures to remedy the problem giving rise to the lawsuit or even to reveal what those security problems were and how it has fixed them."  *Id.*, p. 3 and pp. 5-6.

> **Plaintiffs' Response:**  The settlement requires that TD Ameritrade retain an independent data security analyst – a company that was suggested by Mr. Elvey – to do an extensive review of the Company's data security systems and to ensure that they comply with a host of requirements that are defined in Exhibit G to the Class Action Settlement Agreement.  Docket 227.

- **Elvey Objection:**  The documents filed in support of preliminary approval were not in the format required by General Order 45, Section VI.B.  *Ibid.*

> **Plaintiffs' Response:**  Certain of the documents were in the recommended format and others were not due to the fact that certain documents were not publishable to pdf due to the presence of signatures and other exhibit issues.

- **Elvey Objection:**  The website created for the settlement should not be identified as "stockspamsettlement.com."  Docket No. 237, at p. 4.

> **Plaintiffs' Response:**  The website was not so identified – it bore the domain name of "accountdatasettlement.com."

- **Elvey Objection:**  The settlement failed to incorporate the benefits of the prior unapproved settlement into this settlement, including the provision of a free Trend Micro Internet Security Pro software offer.  Docket No. 237, at p. 4.

> **Plaintiffs' Response:**  The prior settlement was found not to be fair, reasonable and adequate to the class.  (Docket No. 189.)  Accordingly, neither plaintiffs nor TD Ameritrade believed that there was any purpose served in including the components of the

- 15 -

prior settlement into the new settlement.  The parties' negotiations were directed to crafting a settlement that did not suffer from the perceived impediments of the prior settlement and accordingly did not incorporate terms that were previously found to be non-beneficial.  The Trend Micro Internet Security software was a highly controversial provision that drew a number of objections to the settlement, including vigorous objection from Mr. Elvey.  *See, e.g.,* Docket No. 73 (Plaintiff Matthew Elvey's Corrected Response to the Parties' Briefs in Response to the Court's June 13, 2008 Order, p. 14 [noting that "the software will be worthless to the many class members who already have anti-spam software or who use popular online email clients like Gmail, Yahoo!, and Hotmail that are free of charge and have anti-spam capabilities built in"]; Docket No. 152, pp. 6-7, and 16-17.)  That it ultimately did not form a provision in the present settlement is thus not surprising.

- • **Elvey Objection:**  The notice procedures did not provide for the mailing of notice to Class members.  Docket No. 237, at p. 4.

    **Plaintiffs' Response:**  The notice program approved by the Court provided for a three-pronged notice process including mailing of a postcard to class members, emailing the notice to class members and publication of a summary version of the notice in USA Today on two separate occasions.  The Court found that the notice procedures were "the best notice practicable given the circumstances."  Order, filed December 20, 2010, (Docket No. 242) at p. 11.  There is no requirement that mailed notice be given in all cases.  *See, e.g., In re Domestic Air Transportation Antitrust Litig.*, 141 F.R.D. 534 (N.D. Ga. 1992) (finding that innovative published notice program and not individual mailing to class members satisfied due process concerns as well as defendants' res judicata concerns).

- • **Elvey's Objection:**  Plaintiffs' counsel will no longer receive $2.3 million and those funds should have been used to pay claims of class members.  Docket No. 237 at p. 5.

    **Plaintiffs' Response:**  The prior settlement provided no cash payment to class members.  The current settlement provides for up to $6.5 million in cash to be paid for

MASTER FILE NO. C-07-2852 SBA

claims and no less than $2.5 million.  The maximum that class counsel may seek for fees and costs is limited to $500,000.  On its face, Mr. Elvey's objection lacks merit.

- **Elvey's Objection:**  Mr. Elvey is not entitled to receive the $10,000 incentive payment that was previously proposed to be paid to class representatives.  Docket No. 237, at p. 5.

**Plaintiffs' Response:**  Mr. Elvey is correct – in the current settlement **no** class representative or plaintiff will be entitled to **any** incentive payment.  Moreover, Mr. Elvey's objection is inconsistent with his other objections because if his other objections were to be sustained, which they should not be, there would be no settlement and no basis for incentive payments.

### iii.   Mr. Elvey's Objections to Final Approval of the Settlement

Mr. Elvey restates the foregoing objections in opposition to final approval of the settlement.  Docket No. 288, at p. 1.  He also restates the objections that he made to the prior settlement (*ibid*), although those objections were to a vastly different settlement and can not be reconciled with the present settlement.

In addition, Mr. Elvey complains about certain procedures including an alleged conversation that he had with a representative of the Claims Administrator who purportedly misrepresented to him certain of the terms of the settlement.  Docket No. 288, pp. 1-2.  In the Declaration of Jeannine Andreis Re:  Notice Procedures and Objections Raised by Matthew Elvey ("Andreis Decl.") filed concurrently herewith, the conversation between Mr. Elvey and a call center representative are addressed.  Andreis Decl., ¶¶ 4-8.  Mr. Elvey is the only individual who made inquiries of the nature that he discusses in his objection.  *Id.*, ¶ 8.  And, the call center representative clearly informed Mr. Elvey that he should contact Class Counsel with his inquiries. *Id.*, ¶ 6.

Mr. Elvey also complains that the claim form was not promptly available on the website and he objects to an alleged delay in redirecting class members from the old website to the new website.  These complaints are also addressed in the Andreis Declaration.  The claim form was

MASTER FILE NO. C-07-2852 SBA

made available in pdf on the settlement website by January 18, 2011 (three days after the deadline for the mailing and emailing and publication of the notice). The electronic form (capable of being filed out and submitted on line) was made available on February 1, 2011. The Claims Administrator has also mailed hard copies of the claim form to 2,499 class members. The deadline for the submission of claim forms is July 6, 2011. There is no evidence presented that the minimal delay in posting the claim form in pdf or the electronic form has adversely affected the submission of claim forms. Indeed, as of the filing of this response, more than 8,000 claim forms have been submitted and there are 3 months remaining for the submission of forms.

And, finally Mr. Elvey objects to the fact that he cannot opt out and object at the same time. This issue is fully addressed in TD Ameritrade's Response to the Objections and no further response is necessary.

## III    CONCLUSION

For the foregoing reasons, Plaintiffs, on behalf of the Class, respectfully request that this Court overrule the objections and grant final approval to the proposed Settlement.

Dated: April 4, 2011

Respectfully submitted,

KREINDLER & KREINDLER LLP

LAW OFFICES OF HOWARD STRONG

By: ___/s/ Gretchen M. Nelson_____
        Gretchen M. Nelson
*Attorneys for Class Representative Richard Holober*

DAVID C. PARISI, ESQ. (162248)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Telephone: (818) 990-1299
Telecopier: (818) 501-7852
Email: dcparisi@parisihavens.com

By: ___/s/ David C. Parisi_____
        David C. Parisi
*Attorneys for Class Representative Brad Zigler*

- 18 -                                          MASTER FILE NO. C-07-2852 SBA