UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: TD Ameritrade Account Holder Litigation.<br><br>This Document Relates to All Actions. | Case No.:   C 07-2852 SBA<br><br>Related to:<br>C 07-4903 SBA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Dkt. 285, 286 |

The parties are presently before the Court on Plaintiffs' Motion for Final Approval of Class Settlement and Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, pursuant to Federal Rule of Civil Procedure 23(e).  Dkt. 285, 286.  Having read and considered the papers filed in connection with this matter, as well as the arguments of the parties and objector Matthew Elvey, the Court hereby GRANTS the motions for the reasons set forth below.

I.    **BACKGROUND**

A.    **PROCEDURAL OVERVIEW**

On May 31, 2007, Matthew Elvey filed a class action against Ameritrade, claiming that it improperly allowed third parties access to his and other Ameritrade customers' email

addresses, which resulted in their receipt of spam.  Dkt. 1.  Ameritrade confirmed that there

had been a data breach and notified its customers accordingly in September 2007.

On June 28, 2007, Mr. Elvey, joined by Gadgetwiz, Inc. ("Gadgetwiz"), filed an

Amended Complaint which alleged a federal claim for violation of Controlling the Assault

of Non-Solicited Pornography and Marketing Act, 15 U.S.C. § 7704(a)(1), and various

state law causes of action.  Shortly thereafter, they filed a motion for preliminary injunction

and class certification, and, in turn, Ameritrade filed a motion to dismiss.  Dkt. 11, 13.

Ameritrade made its then Chief Information Security Officer, William Edwards, available

for deposition.  However, upon stipulation of the parties, the Court continued the motions

to allow them the opportunity to explore settlement.  Dkt. 33.

On September 21, 2007, Brad Zigler filed a separate class action lawsuit against

Ameritrade based on the same conduct alleged in the Elvey action.  Zigler v. TD

Ameritrade, Inc., No. C 07-4903 SBA.  Subsequently, the parties in Elvey and Zigler

agreed to consolidate the actions.  Dkt. 52.  Messrs. Elvey and Zigler, and another plaintiff,

Joel Griffiths, filed a Consolidated Complaint on June 13, 2008.  Dkt. 60.  The

Consolidated Complaint, which is the operative pleading in this action, alleges claims under

the Computer Fraud and Use Act, 18 U.S.C. § 1030, the Nebraska Uniform Trade Practices

Act, California Consumer Legal Remedies Act, California's Unfair Competition Law and

for breach of fiduciary duty.  Id.

### B.   THE FIRST SETTLEMENT

On May 28, 2008, the parties informed Judge Walker that they had reached a

settlement and set the matter for a preliminary approval hearing to take place on June 12,

2008.  Dkt. 51, 53.  The hearing on the motion for preliminary approval proceeded as

scheduled.  Dkt. 57.  The next day, Judge Walker issued a written decision denying the

motion for preliminary approval without prejudice.  Dkt. 61.  Among other things, Judge

Walker expressed concern that Plaintiffs' counsel had failed to establish the basis of its fee

request and that the parties had failed to submit facts from which the Court could "make a

1  proper valuation of the settlement, which on its own does not include any monetary

2  relief[.]"  Id. at 2-3.

3      **C.    THE SECOND SETTLEMENT**

4          Following the Court's rejection of the first settlement, the parties reached a second

5  settlement agreement.  Messrs. Zigler and Griffths and Ameritrade jointly filed a brief in

6  support of the preliminary approval which set forth various revisions to the proposed

7  settlement.  Dkt. 90.  Mr. Elvey, however, retained attorney Mark Chavez as separate

8  counsel, and filed a memorandum urging the Court to reject the revised settlement.  Dkt.

9  73.  The Court held a hearing on the motion on October 7, 2008, and took the matter under

10  submission.  Dkt. 84.

11         On May 1, 2009, Judge Walker issued a written order granting the motion for

12  preliminary approval of the second settlement.  Dkt. 93.  The Court confirmed the

13  appointment of Parisi & Havens LLP as class counsel, Scott A. Kamber and Ethan Preston

14  of KamberEdelson, LLC as lead counsel, and Gadgetwiz, and Messrs. Griffith and Zigler as

15  class representatives.  Id. at 10.  Notice was then disseminated to the Class.  Id.

16         On July 9, 2009, and again on July 13, 2009, Mr. Elvey filed further objections to

17  the second settlement.  Dkt. 152, 163.  Numerous other individuals also filed objections.

18  The fairness hearing took place on September 10, 2009.  Dkt. 187.  On October 23, 2009,

19  the Court issued an order denying the parties' motion for final approval.  Dkt. 189.  In

20  particular, Judge Walker found that the proposed settlement did not provide sufficient

21  benefits to class members to warrant its approval.  Id. at 12.  He also set aside the

22  provisional class certification and appointment of lead counsel.  Id.  The Court scheduled a

23  case management conference for December 10, 2009, "to discuss scheduling and other

24  matters, including the possible addition of [Gretchen] Nelson [of Kreindler & Kreindler] to

25  these proceedings as substitute counsel."  Id. at 13.

26         On December 10, 2009, the Court conducted a case management conference, at

27  which time Ms. Nelson stated that she was prepared to assume representation of the Class,

28  with Richard Holober serving as Class representative.  Dkt. 191.  The Court ordered the

1  parties to submit a joint report by February 11, 2010, and scheduled a further case

2  management conference for February 25, 2010.  Id.

3          **D.**     **THE THIRD SETTLEMENT**

4          On February 23, 2010, the Court, upon request of the parties, vacated the case

5  management conference scheduled for February 25, and referred the matter to Magistrate

6  Judge Joseph C. Spero for further settlement discussions.  Dkt. 196.  Judge Spero and the

7  parties engaged in a full day of discussions, which resulted in a general outline for a

8  settlement.  With Judge Spero's continued oversight, the parties continued their discussions

9  and were able to resolve the remaining areas in dispute.  Dkt. 224.

10                 **1.**      **Motion for Preliminary Approval**

11          On November 15, 2010, attorney Nelson, on behalf of class representatives Messrs.

12  Holober and Zigler, filed a motion for preliminary approval of the revised settlement

13  agreement.  Dkt. 226.[1]  The Court held a hearing on the motion on December 9, 2010, and

14  took the matter under submission.  Dkt. 240.

15          On December 20, 2010, Judge Walker issued a written order granting Plaintiffs'

16  motion for preliminary approval for a Settlement Class, which is defined as:  "All persons

17  who are or were accountholders or prospective accountholders of the Company and who

18  provided physical or email addresses to the Company on or before September 14, 2007."

19  Dkt. 226 at 9.  The Court also appointed Ms. Nelson of Kreindler & Kreindler LLP, Mr.

20  Strong of the Law Offices of Howard Strong, David Parisi of Parisi and Havens LLP, and

21  Scott Kamber of Kamber Law as Class Counsel.  Dkt. 242 at 12.

22          Unlike the prior settlements, the present Settlement provides for monetary

23  compensation to the Class.  Id. at 2-3.  Specifically, Ameritrade has agreed to pay the Class

24  a minimum of $2.5 million, up to a maximum of $6.5 million, depending upon the actual

25  number of claims submitted.  Id.  In the event the claims exceed $6.5 million, the individual

26  

27        [1] The parties' Class Action Settlement Agreement ("Settlement"), which was entered into as of November 15, 2010, is attached as Exhibit 1 to the Declaration of Gretchen M. Nelson in Support of Motion for Preliminary Approval of Class Settlement.  Dkt. 227, 227-

28  1.

1   payout will be reduced proportionately and Class Counsel will receive no attorneys' fees.

2   Id.  If the claims submitted (inclusive of attorney's fees of $500,000) do not reach the $2.5

3   million threshold, Ameritrade will make up the shortfall by donating the balance due to

4   specified, non-profit privacy organizations agreed upon by the parties.  Id.

5        Class members are entitled to receive $50 to $2,500 on each claim.  In particular, a

6   Class Member is entitled to $50 if he or she suffered identity theft on an existing credit or

7   debit card.  Dkt. 226 at 5.  Id.  The Settlement also provides for payment of $250 for

8   identity theft in an account other than an existing credit or debit card, and, in addition, up to

9   $1,000 (including the $250) for any unreimbursed losses.  Id.  The claim form advises Class

10  Members that proof is required to support a claim of identity theft.  Dkt. 227-1 at 11.

11       At its own expense, Ameritrade will retain an independent evaluator, Neophasis, to

12  assess whether the company has met information technology security standards, as set forth

13  in the Settlement.  Id. at 14.  Ameritrade is obligated to correct any deficiencies in its

14  security measures identified by Neophasis.  Id.

15       In his order preliminarily approving the Settlement, Judge Walker noted that Mr.

16  Elvey had made several objections to the proposed Settlement, but that "[t]he objections

17  speak more to whether the proposed settlement is 'fair, reasonable and adequate,' [under

18  Rule 23(e)]," as opposed to the standard for preliminary approval, which looks to whether

19  the settlement was the product of serious, informed and non-collusive negotiations, has no

20  obvious deficiencies, and does not improperly grant preferential treatment to class

21  representatives.  Dkt. 242 at 7.  As such, Judge Walker overruled Mr. Elvey's objections,

22  without prejudice.  Id. at 7-8.

23            **2.    Motion for Final Approval and for Attorney's Fees**

24       Now pending before the Court are Plaintiffs' companion motions for final approval

25  of the Settlement and for an award of attorney's fees and costs in accordance with the terms

26  of the Settlement.  In anticipation of the fairness hearing, a number of Class members filed

27  objections to the proposed settlement, though the only substantive objections were filed by

28  Mr. Elvey.  At the fairness hearing, attorneys Nelson, Strong and Parisi appeared for

1    Plaintiffs, and Robert Kriss and Lee Rubin appeared for Ameritrade.  Mr. Elvey appeared

2    pro se, and presented argument in support of his objections.

3    **II.     MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

4         **A.     LEGAL STANDARD**

5         Federal Rule of Civil Procedure 23(e) provides that: "The claims, issues, or defenses

6    of a certified class may be settled, voluntarily dismissed, or compromised only with the

7    court's approval."  Approval under this rule entails a two-step process:  (1) preliminary

8    approval of the settlement; and (2) final approval of the settlement at a fairness hearing

9    following notice to the class.  See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 221

10   F.R.D. 523, 525 (C.D. Cal. 2004); Manual for Complex Litig. (Fourth) §§ 21.632-21.634,

11   at 321-22 (2004).  The Court may finally approve a class settlement "only after a hearing

12   and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); In re

13   Bluetooth Headset Prods. Liab. Litig., -- F.3d --, 2011 WL 3632604, at *8 (9th Cir. Aug.

14   19, 2011).

15        The primary concern of Rule 23(e) is "the protection of those class members,

16   including the named plaintiffs, whose rights may not have been given due regard by the

17   negotiating parties."  Officers for Justice v. Civil Serv. Comm'n of the City and County of

18   San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  The district court's discretion in

19   considering final approval of a settlement is informed by balancing the following factors:

20            (1) the strength of the plaintiffs' case; (2) the risk, expense,
             complexity, and likely duration of further litigation; (3) the risk
21           of maintaining class action status throughout the trial; (4) the
             amount offered in settlement; (5) the extent of discovery
22           completed and the stage of the proceedings; (6) the experience
             and views of counsel; (7) the presence of a governmental
23           participant; and (8) the reaction of class members to the
             proposed settlement.
24

25   Churchill Vill. LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (citing Hanlon v.

26   Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). "This list is not exhaustive, and

27   different factors may predominate in different factual contexts."  Torrisi v. Tucson Elec.

28   Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).  In addition to these factors, the Court may

consider the procedure by which the parties arrived at the settlement.  See Chun–Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

The district court's role in evaluating a proposed settlement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement is fair as a whole.  See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  It is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms.  Officers for Justice, 688 F.2d at 625.  "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."  Evans v. Jeff D., 475 U.S. 717, 726 (1986); see also Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003) ("a district court cannot unilaterally modify the provisions of a consent decree through its order approving the proposed decree"), overruled on other grounds by Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 617 (9th Cir. 2010); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions.  The settlement must stand or fall in its entirety.") (internal quotations marks omitted).

**B.**    **BALANCING OF FACTORS**

**1.**    **Strength of Plaintiffs' Case**

The first factor is to consider the strength of Plaintiffs' case.  In that regard, the Court notes that federal courts have viewed private class actions involving data breaches with skepticism, particularly where, as here, the only alleged injury is the receipt of spam, increased risk of identity theft or loss of the benefit of the bargain.  See Krottner v. Starbucks Corp., Nos. 09-35823, 09-35824, 2010 WL 5185487 (9th Cir. Dec. 14, 2010) (affirming dismissal of negligence claim arising from stolen computer on the ground that increased risk of identity theft is not a cognizable injury under state law); Pisciotta v. Old Nat'l Bancorp., 499 F.3d 629, 639-640 (7th Cir. 2007) (affirming dismissal of all claim

arising from financial institution's data breach); <u>see also</u> <u>Cherny v. Emigrant Bank</u>, 604 F. Supp. 2d 605, 509 (S.D.N.Y. 2009) ("receipt of spam by itself … does not constitute sufficient injury entitling [the plaintiff] to compensable relief").  Given the dearth of legal authority supporting Plaintiffs' claims, the Court finds that this factor weighs in favor of approving the Settlement.

### 2.    Risk, Expense, Burden and Duration

The next factor considers the risk, expense and duration associated with prosecuting this case through trial and the appellate process.  These considerations also favor approval of the Settlement. The factual predicate of this case involves a computerized data breach, the factual and legal analysis of which both sides agree would have been complicated, thereby necessitating the use of experts by both sides.  Since the resolution of the case would have turned on expert testimony, the qualification of such experts and the admission of their testimony would have been subject to extensive and costly motion practice.  In addition, the lack of legal support for Plaintiffs' claims further adds to the risks associated with further litigation, as opposed to settling the action.

### 3.    Risk of Maintaining Class Action Status

The third factor considers the risk of maintaining class certification in the event the litigation was to proceed.  As an initial matter, defendants in data breach cases have been successful in thwarting plaintiffs' efforts to obtain class certification.  <u>See</u> <u>In re TJ Cos. Retail Sec. Breach Litig.</u>, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify a class of banks alleging damages resulting from a retailer's data breach because of individual issues relating to causation); <u>Stollenwerk v. TriWest Healthcare Alliance</u>, No. CV-03-0185-PHX-SRB, Slip Op. at 5-6 (D. Ariz. June 10, 2008) (individualized issues relating to proof of causation would predominate over common questions in a class action case involving theft of computer equipment containing personal information).  Even where class certification is initially granted, there always is a risk of decertification, as evidenced by Judge Walker's October 23, 2009 decision to set aside his provisional grant of class

certification.  The difficulties and risks in obtaining and maintaining class militate in favor

of approving the Settlement.

### 4.        Amount Offered in Settlement

The amount of the settlement is another factor for the Court to consider in whether

to finally approve a proposed class action settlement.  Churchill Vill., 361 F.3d at 574.

Here, Ameritrade has agreed to pay a minimum of $2.5 million and up to a maximum of

$6.5 million in claims.  Under the Settlement, Class Members are eligible for a cash payout

in amounts ranging from $50 to $2,500.  Additionally, the interests of the Class are

protected against the possibility of an excessive attorney fee award based on the $500,000

cap, and the provision that no fees will be paid if the aggregate claims exceed $6.5 million.

The Court notes that this unusual provision underscores the significant benefits and

protections conferred upon the Class due to the laudable efforts of Class Counsel.

The benefits of the instant Settlement are underscored by the fact that Judge Walker

rejected two prior settlement proposals on the grounds that they provided no discernable

benefit to individual Class members.  In his order preliminarily approving the current

settlement, Judge Walker specifically noted the new settlement affords tangible benefits to

the class:

> Perhaps most importantly, the consideration agreed to is a vast
> improvement upon the previous proposed settlement. *Unlike the
> previous agreement, plaintiffs will be provided, under the terms of the
> new agreement, discernable benefits*.  Furthermore, the attorney-fee
> award has been drastically reduced, from a potential $1.87 million in
> plaintiffs' first proposed settlement, to a maximum of $500,000 here;
> class members should therefore receive a greater share of the
> settlement. See Doc #53 at 8; #227-1 at 10.

Dkt. 242 at 10 (emphasis added).  Consistent with Judge Walker's finding, the Court finds

that the amount offered by Ameritrade to resolve this action favors approval of the

Settlement.

5.      **Extent of Discovery and Stage of the Proceedings**

The record indicates that the Settlement was reached at the early stages of litigation and that little discovery has been conducted.  Nonetheless, Ameritrade has admitted that there was a data breach.  Thus, the lack of discovery, when balanced against other factors, does not warrant rejecting the Settlement.

6.      **Experience and Views of Counsel**

The experience and views of counsel representing Plaintiffs and Ameritrade support approval of the settlement.  See Hanlon, 150 F.3d at 1026 (noting that the experience of counsel representing plaintiff and defense also favors final approval of the proposed settlement).  Ameritrade has been represented by Mayer Brown, a well-known and reputable law firm.  Ameritrade's counsel strongly supports approval of the Settlement.  Dkt. 284.  Likewise, Ms. Nelson and Mr. Strong, counsel for the Class¸ have extensive experience with class actions, and opine that "this settlement is more than fair, reasonable and adequate, particularly in light of the risks attendant with litigation of this nature which involves claims arising from a data breach by unauthorized and unknown actors."  Nelson Decl. ¶ 21, Dkt 285-2.  Given their collective experience, the Court credits counsels' views that the Settlement confers actual benefits to the Class, and is worthy of approval.

7.      **Presence of Governmental Participant**

Notice of the Settlement was sent to the Attorney General's office of each of the fifty states.  None have objected to the Settlement.

8.      **Reaction of the Class**

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered.  Mandujano v. Basic Vegetable Prods. Inc., 541 F.2d 832, 837 (9th Cir. 1976).  Out of the approximately six million class members who were mailed notice of the Settlement, only twenty-three have submitted objections and less than 200 (less than 0.01% of the Class) have chosen to opt out.  Of the objections submitted, only those submitted by Mr. Elvey state any ostensible arguments.

Given the relatively small number of objections and opt-outs, the Court finds that the reaction of the class to the settlement is positive, which favors approving the Settlement.  See Rodriguez, 563 F.3d at 967 ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections.").

## 9.    Arm's Length Transaction

Finally, the Court considers whether the Settlement was likely the result of good faith negotiations at arm's length, or whether it was the product of fraud or collusion.  See Officers for Justice, 688 F.2d at 625.  Here, the Settlement is the result of arms-length settlement conferences and discussions initiated before, and overseen by, Magistrate Judge Spero.  In addition, the current iteration of the Settlement was reached after Judge Walker had rejected two prior versions which he believed did not confer sufficient benefits to the Class.

## 10.    Summary

On balance, the Court finds that the relevant factors weigh heavily in favor of approving the Settlement.  Accordingly, the Court now turns to the various objections it has received to the Settlement.

## C.    OBJECTIONS TO THE SETTLEMENT

In determining whether to finally approve a class action settlement, the Court considers whether there are any objections to the proposed Settlement and, if so, the nature of those objections.[2]  However, the fact that there is some opposition does not necessitate disapproval of the Settlement; rather, the court must evaluate whether the objections suggest serious reasons why the proposal might be unfair.  Bennett v. Behring Corp., 737

---

[2] The Class Notice (long form) instructed Class Members that any objections to the Settlement must be filed with the Court and postmarked by March 15, 2011, with copies sent to Class Counsel and defense counsel.

1  F.2d 982 (11th Cir. 1984).  As will be set forth below, none of the objections present any

2  compelling reasons for rejecting the Settlement.

3                                1.    **Matthew Elvey**

4          On December 9, 2010, Mr. Elvey filed objections in connection with the earlier

5  motion for preliminary approval.  Dkt. 237.  Judge Walker overruled the objections "at

6  [that] time," finding that they were germane to the final approval, as opposed to the

7  preliminary approval, of the Settlement.  On March 16, 2011, Mr. Elvey filed objections to

8  the final approval of the Settlement in which he incorporates his December 9 objections and

9  raises several new objections.  Dkt. 288.  The Court discusses these objections in turn.

10                         a)    *Misinformation by Claims Administrator*

11         Mr. Elvey complains that the Claims Administrator representative gave him

12  misleading advice regarding which claims and injuries are the subject of the Settlement.

13  Specifically, Mr. Elvey claims that he was told that: (1) the identity theft must have

14  occurred before a specific date in order to qualify for compensation; (2) a claimant must

15  present proof that the identity theft was directly related to Ameritrade; and (3) that the

16  validity of claims could be determined by Class Counsel.  Though the call center

17  representative attempted to respond to Mr. Elvey's questions, she ultimately recommended

18  that he contact Class Counsel directly for clarification.  Andreis Decl. ¶ 6, Dkt. 297-1.

19         Plaintiffs do not dispute that the Claims Administrator conveyed this information or

20  that the information provided was in error.  However, they explain that the hypothetical

21  questions posed by Mr. Elvey are not typical inquiries generally received by the Claim

22  Administrator call center.  Id.  In addition, after Rosenthal's Case Manager reviewed Mr.

23  Elvey's summary of the above on his personal blog about this case, she contacted call

24  center management staff with directions to provide call center representatives with

25  additional training and guidance on how to respond to questions such as those posed by Mr.

26  Elvey.  Id. ¶¶ 7-8.

27         Based on the record presented, the Court finds that there is no evidence that the

28  Claim Administrator sought to "mislead" any Class Members.  Any erroneous advice

appears to have been the result of specific and atypical hypothetical questions posed by Mr. Elvey.  In addition, the Claims Administrator has since addressed Mr. Elvey's concerns by requiring additional training of call center staff.  The Court, therefore, is not persuaded that the Settlement should be rejected on this basis.

### b)      Claim Form

Mr. Elvey next contends that the Claims Administrator posted a downloadable PDF claim form on January 18, 2011, three days after the deadline set by Judge Walker. According to Mr. Elvey, this delay was an attempt by Class Counsel to reduce the number of claims so that it could be assured of recovering attorney's fees.  Dkt. 288 at 2.  The Court finds no evidence to support Mr. Elvey's contention.  Moreover, given that the deadline for submitting claim forms did not pass until July 6, 2011, neither Mr. Elvey nor any Class Member suffered any prejudice resulting from the negligible delay in posting the claim form on-line.

### c)      Renewed Motion to Unseal Deposition Transcript

Mr. Elvey seeks to have the deposition transcript of William Edward, former Chief Information Officer of Ameritrade, unsealed for purposes of the final settlement approval. This is not his first such request.  In 2008, Mr. Elvey, through counsel, requested the unsealing of the transcript.  After a lengthy hearing on the issue, Judge Walker denied the motion.  However, a copy of the deposition transcript was later provided to his counsel on an attorney's eyes only basis.

On December 9, 2010, Mr. Elvey made a pro se motion to unseal the deposition, which he claimed was relevant to the preliminary approval of the third settlement.  Dkt. 239.  On January 26, 2011, Judge Walker denied the motion.  Dkt. 243.  In reaching his decision, Judge Walker found no reason to deviate from his prior ruling, and denied Mr. Elvey's renewed motion.  Id.

A district court judge has the discretion to reconsider an interlocutory decision rendered by another judge of the same court.  Amarel v. Connell, 102 F.3d 1494, 1515 (9th Cir. 1996).  Reconsideration is warranted where there is new evidence, a change in the law,

clear error, or manifest injustice in the court's order.  See <u>Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.</u>, 5 F.3d 1255, 1262-63 (9th Cir. 1993).  Mr. Elvey has made no showing under the foregoing standard that reconsideration of Judge Walker's ruling is necessary or appropriate.  Nor has he demonstrated how unsealing the deposition transcript would bear upon whether the Settlement should be approved.  Therefore, the Court denies Mr. Elvey's renewed request to unseal the deposition transcript of William Edward.

### d)   *No Monetary Relief to Certain Individuals*

Mr. Elvey complains that the Settlement does not provide any benefit to persons whose account was compromised but did not suffer any identity theft; persons who received spam; or persons who paid for identity theft protection software due to the data breach.  Mr. Elvey Mem. at 1-2.  The fundamental flaw in Mr. Elvey's argument is that it ignores that the Settlement is a *compromise*, which balances the possible recovery against the risks inherent in litigating further.  The possibility that the Settlement does not provide for a payout to every conceivable accountholder who in some way may have been affected by the data breach does not establish that the Settlement is unfair or unreasonable. Moreover, given the questionable viability of Plaintiffs' claims, the Class is fortunate to receive the benefits obtained through the diligence and hard work of Class Counsel.

### e)   *Adoption of Security Measures*

Next, Mr. Elvey asserts that the Settlement does not address the underlying security flaws that led to the data breach.  <u>Id.</u> at 3, 5-6.  While acknowledging that Ameritrade will be required to hire an independent evaluator to assess whether the company has met information technology security standards, he argues that there is nothing preventing Ameritrade from reverting to its former practices that led to the data breach.  He also takes exception to the standards to be employed by the evaluator, claiming that they leave "gaping holes" in terms of security.

Mr. Elvey's concerns are unavailing.  While it is possible that Ameritrade could revert to its former practices, it is unclear why it would have any incentive to return to practices that potentially would result in another data breach—and lawsuit.  In addition, the

security firm selected to serve as the auditor is the firm proposed by Mr. Elvey.  But even if the auditing requirement is not an absolute guarantee against future data breach, that alone does not show that the Settlement is unreasonable.

### f)     Violation of General Order 45 § VI.B

Mr. Elvey complains that the Claim Form is not in PDF, as required by General Order 45 § VI.B.  Plaintiffs acknowledge that some of the forms could not be converted to PDF because they contained actual signatures.  However, the mere fact that certain documents may not be in PDF format is not a reason to reject the Settlement.

### g)     Name of the Website

Mr. Elvey takes exception to the "misleading" name of the website to submit claims, which he alleges is www.stockspamsettlement.com.  Mr. Elvey Mem. at 4.  However, the actual name of the website is www.accountdatasettlement.com.  Pls.' Response at 15, Dkt. 297.  Thus, the Court rejects Mr. Elvey's contention that the name of the claims website is misleading or otherwise detracts from the fairness and reasonableness of the Settlement.

### h)     Omission of Benefits from the Prior Settlement

Mr. Elvey next avers that various benefits provided for in the prior (but rejected) settlement are not present in the current Settlement; i.e. no fee for Trend Micro Internet security software, no payment to class representatives.  Elvey Mem. at 4-5.  As Plaintiffs point out, there was no reason to include these provisions in light of the Court's finding that the settlement was not fair, reasonable and adequate for the Class.  After Judge Walker rejected the prior settlement, the parties, with the assistance of Judge Spero, endeavored to fashion a revised settlement that did not suffer from the same perceived deficiencies that led to the disapproval of the prior agreement.  The Trend Micro software proposal in particular was controversial; in fact, Mr. Elvey previously criticized its inclusion in the settlement as useless.  Dkt. 73 at 14.

### i)     Lack of Mailed Notice

In his December 20, 2010 Order granting preliminary approval, Judge Walker approved three forms of notice:  (1) summary notice mailed via postcard or email;

1    (2) summary notice issued in USA Today; and (3) posting of a full (long-form) notice on a

2    public website maintained by the notice provider.  Dkt. 242 at 11.  The Court found that

3    "this three-pronged form of proposed notice, according to which each potential class

4    member will be emailed or sent a postcard, [is] the best practicable notice under the

5    circumstances."  Id.

6         Here, Mr. Elvey contends that the mail should have been required in cases where the

7    delivery via email failed.  Mr. Elvey Mem. at 4.  However, there is no evidence to

8    substantiate that this actually posed a problem; and if so, to what extent.  Moreover, there is

9    no requirement that notice be perfect.  Rather, Rule 23 requires only the "best notice

10   practicable under the circumstances" that is directed "in a reasonable manner to all

11   members who would be bound."  Fed. R. Civ. P. 23(c) (2)(B); Fed.R.Civ.P. 23(e)(1)(B);

12   see also Browning v. YahooA Inc., No. C 04-01463 HRL, 2007 WL 4105971, at *7 (N.D.

13   Cal. Nov. 16, 2007) (email notice sufficient even if some email addresses of class members

14   had been deleted).

15                    *j)      Redistribution of Attorneys' Fees*

16        Mr. Elvey maintains that the reduction in the amount of attorneys' fees from the

17   prior proposed settlements should be redistributed to the Class.  Dkt. 237 at 5.  This

18   contention ignores that in the prior settlement, there was no cash payout to class members.

19   In the current settlement, however, Ameritrade has agreed to pay up to $6.5 million to the

20   Class.  Thus, Mr. Elvey's concerns are moot.

21                    *k)      Lack of Incentive Award*

22        Mr. Elvey complains that he is not receiving a $10,000 incentive award for all of his

23   efforts in prosecuting this case.  Dkt. 237 at 5.  However, Mr. Elvey is no longer a class

24   representative.  In addition, this complaint conflicts with his objections in that if his

25   objections were sustained, there would be no settlement for any Class member.

26                    *l)      Incorporation of Prior Objections*

27        Finally, Mr. Elvey states that:  "I wish I had time to write more, instead of rushing

28   out this unpolished draft on inadequate sleep."  Dkt. 237 at 6.  As such, he attempts to

incorporate all of his prior objections, including his objections filed on July 9, 2009. This contention is frivolous. Judge Walker rejected Mr. Elvey's objections to the motion for preliminary approval on December 20, 2010, and at that time, set a deadline of March 15, 2011 to submit objections to the final approval. Thus, Mr. Elvey was afforded almost three months to prepare his objections. His apparent decision to wait until the last minute and prepare objections on "inadequate sleep" is a result of his own dilatory conduct, and does not justify permitting him to incorporate prior objections. Additionally, Mr. Elvey's prior objections were presented in response to a settlement agreement that has been superseded by the Settlement now before the Court. Yet, Mr. Elvey has made no showing that his previously-rejected objections are germane to the present Settlement.

### 2.      M. Blum

M. Blum apparently submitted an objection to Class Counsel, but did not file his objection with the Court as required. Because Mr. Blum did not file his objection, it is not properly before the Court. In addition, the Court has not been provided with a copy of his objection. Therefore, the putative objection of Mr. Blum will not be considered.

### 3.      Kassim Ferriss

Like Mr. Blum, Kassim Ferriss sent an objection to Class Counsel, but did not file it with the Court. However, on March 28, 2011, Mr. Ferriss submitted a letter to the Court purporting to withdraw his objection, and instead, requested to be excluded from the Class. Rule 23(e)(5) provides that "[a]ny class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval." However, since Mr. Ferriss did not file his objection, there is nothing to withdraw. As for his opt-out, it is late because the deadline for submitting an opt-out was March 15, 2011.

### 4.      Jeff Rubino

The one-sentence objection of Jeff Rubino (Dkt. 269) states no grounds for his objection. Therefore, his objection is OVERRULED.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.      Charles F. Orelli

The objection filed by Charles Orelli (Dkt. 270) is unintelligible.  He makes a number of statements about having "bad credit" and an identity theft claim in Oregon.  However, he offers no specific reason for objecting to the instant Settlement. Therefore, Mr. Orelli's objection is OVERRULED.

### 6.      Stanley Teich

Stanley Teich's submission (Dkt. 259) states that he did not receive unspecified "notices," but he does not otherwise express any reasons for objecting to the Settlement. To the extent that his filing is considered an objection, it is OVERRULED.

### 7.      William Lytran

The objection of William Lytran (Dkt. 272) is largely unintelligible, though he appears to state that he was a victim of identity theft.  Plaintiffs have interpreted Mr. Lytran's submission as a complaint that his losses exceed the $50-2,500 recovery under the Settlement.  Pl.'s Response to Objections at 7.  However, the possibility that a class Settlement does not fully compensate each class member for the full amount of his or her loss is not ipso facto grounds for rejecting the Settlement.  As noted, courts have been skeptical of data breach class actions.  Thus, the risk of proceeding to trial—and possibly recovering nothing—must be weighed against the certainty of recovering something.  Thus, Mr. Lytran's putative objection is OVERRULED.

### 8.      Lynn O. Lamy

Lynn O. Lamy objects to the Settlement on the ground that she believes the claims "to be unjustified, frivolous and fostered by opportunistic shysters with a low sense of morality."  Dkt. 244.  She also requests to be excluded from the Settlement.  Ms. Lamy's apparent concern for Ameritrade is inapposite, since the purpose of Rule 23(e)'s final approval process is the protection of absent class members, and not the defendant.  <u>Officers for Justice</u>, 688 F.2d at 624.  Ms. Lamy's objections are, therefore, OVERRULED.

**9.    Timothy Ray**

Like Ms. Lamy, Timothy Ray states in his objection (Dkt. 253) that he has not been harmed by Ameritrade and therefore it would be "wrong" for him and others to profit from the lawsuit.  Dkt. 253.  He further states that, if anything, he will be indirectly harmed by the Settlement due to "associated legal costs."  Id.  Since Mr. Ray has not articulated any compelling reason that the Settlement is unfair to the Class, his objection is OVERRULED.

**10.    Thomasine V. Philips**

Thomasine Philips expressly objects to the Settlement, but offers no reason for her objection other than wanting to be "released from all attorney's fees and costs."  Dkt. 252. Since Ameritrade is responsible for the payment of fees, Ms. Philips' objection is without foundation, and thus, is OVERRULED.

**11.    Guy E. Taylor**

Guy Taylor states that "this lawsuit is wholly frivolous and nothing more than an attempt to shake down the defendant, T.D. Ameritrade."  Dkt. 254.  As set forth above, objections based on concerns for Ameritrade are not germane to the issue of whether the Settlement is fair.  Thus, Mr. Taylor's objection is OVERRULED.

**12.    Anna R. Torres**

Anna Torres' objection (Dkt. 265) is based on her concern that the lawsuit is driven by "greedy lawyers" who are attempting to "stick it to the little man (or woman)."  Ms. Torres' objection, however, states no substantive grounds for objecting to the Settlement and, therefore, is OVERRULED.

**13.    Conrad Luhutko**

Conrad Luhutko complains that the proof of loss necessary to submit a claim is too onerous.  The claim form instructs as follows:

> You should provide to the Claims Administrator a copy of any police report or other report to a government agency such as the FTC or the FBI or U.S. Postal Service or a letter or affidavit from a credit card company or bank or other creditor stating that account charges were fraudulent due to identity theft.  If you are unable to provide the type of documentation described above, but are able to provide to the Claims Administrator another type of documentation that shows you were a victim of identity theft,

the Claims Administrator will consider other documentation
you provide.  However, *your claim is more likely to be
approved if you are able to submit to the Claims Administrator
a police report or other report to a government agency such as
the FTC or a letter or affidavit from a credit card company or
other creditor stating that account charges were fraudulent due
to identity theft.*

Class Action Settlement Agreement, Ex. F, Dkt. 227 (emphasis in original).

Mr. Luhutko also complains that because of the lapse in time between the incident
and Ameritrade's disclosure, many class members did not make a report to the police or
other agencies and therefore lack the necessary evidentiary support for their claim.  Setting
aside the lack of foundation for what other class members experienced, Mr. Luhutko
overlooks the provision in the notice which states that, "If you are unable to provide the
type of documentation described above, but are able to provide to the Claims Administrator
another type of documentation that shows you were a victim of identity theft, the Claims
Administrator will consider other documentation you provide."  In other words, the Claims
Administrator will give consideration to other forms of proof.  Therefore, Mr. Luhutko's
objection is without merit and is, therefore, OVERRULED.

### 14.    Steven Greeran

Steven Greeran (Dkt. 275) complains that he has "no supporting document [sic] or
unauthorized transactions on [his] statements[.]"  It is unclear whether this is an objection.
To the extent that he is concerned that he cannot file a claim without documentation, the
Notice provides that the Claims Administrator will consider alternate forms of proof to
support a claim.  If he has not been the victim of identity theft, he will not be entitled to any
recovery.  As discussed, the risk of identity theft or the receipt of spam has been found by
other courts to be insufficient to sustain a claim for damages.  Mr. Greeran's objection is
OVERRULED.

### 15.    Bonnie Elaine Diskland

Although the objection submitted by Bonnie Elaine Diskland is largely
unintelligible, she appears to complain that the $50 - $2,500 payment is insufficient to
compensate her for her losses.  The flaw in this objection is that it fails to take into account

that a Settlement represents a compromise, which takes into account Plaintiffs' likelihood of succeeding and the amount of potential recovery, against the risk of investing further time and resources and recovering nothing.  As noted, courts have been skeptical of data breach class actions, and many have been dismissed at the pleading stage.  In addition, the range of payments afforded under the Settlement correlates to findings in a Federal Trade Commission report on identity theft conducted in 2006, which noted that the average victim loss was $371 and that most did not suffer any out of pocket expenses.  See Dkt. 297 at 11. In addition, to the extent that any class member did not feel adequately compensated, he or she could have opted out of the Settlement and pursued his or her own action.  For these reasons, Ms. Diskland's objection is OVERRULED.

### 16.   Frank Catapano

Though not entirely clear, Frank Catapano (Dkt. 271) appears to object to the Settlement on the grounds that it fails to provide compensation for losses he suffered as a result of investing in penny stocks.  However, Mr. Capatano fails to establish the nexus between the data breach and his alleged investment losses.  Since he has not shown that the Settlement is unfair or unreasonable, his objection is OVERRULED.

### 17.   Jack Simke

Jack Simke (Dkt. 267) objects that the Settlement is "insufficient to curb the outrageous behavior and utter disregard that [Ameritrade] has shown towards its customers."  This objection is without merit.  The Settlement provides for a payment to the Class up to $6.5 million, and requires Ameritrade to retain, at its own expense, an independent data security expert to evaluate whether Ameritrade is in compliance with the security standards incorporated in the Settlement Agreement and to promptly remedy any noncompliance.  Mr. Simke's conclusory and unsubstantiated objection is OVERRULED.

### 18.   Objections Not Served on Counsel

There were seven additional objections that were submitted to the Court, but that were *not* served on counsel.  Since these objections were not submitted in compliance with the Notice, they are not properly before the Court.  Nonetheless, the Court Clerk provided

1    copies of the additional objections to counsel, who, in turn, filed Plaintiffs' Supplemental

2    Response to Additional Objections to Final Approval of Class Settlement, which addresses

3    them on the merits.  Dkt. 304.  As will be set forth below, none of these improper

4    objections has any merit.

5                    a)    **Daniel H. Adams**

6          Mr. Adams contends that he received "notice of the action" on March 21, 2011, after

7    the March 15, 2011 deadline to opt-out or object, and that such delay was intended to

8    prevent him from exercising either option.  However, Mr. Adams previously filed an opt-

9    out, which was identified by Plaintiffs in the list of names of persons who timely filed opt-

10   outs.  <u>See</u> Dkt. 290-2.  Therefore, Mr. Adams' purported objection is OVERRULED as

11   moot.

12                   b)    **Willis Ashby & Gregory Cohen**

13         Both Willis Ashby and Gregory Cohen object based on their belief that the lawsuit

14   was meritless.  As discussed, a concern regarding the protection of the defendant is not a

15   valid basis for objecting to a class settlement.  The objections of Messrs. Ashby and Cohen

16   are OVERRULED.

17                   c)    **E. Austin**

18         E. Austin claims that the Settlement is a "scam" apparently because he could not get

19   in contact with Class Counsel.  However, he presents no reasons demonstrating that the

20   Settlement is not fair or reasonable.  Therefore, the Court OVERRULES Mr. Austin's

21   objections.

22                   d)    **Victor Russell Daniel**

23         Victor Russell Daniel's letter expresses his confusion regarding the Settlement and

24   how to submit a claim form.  Class Counsel contacted Mr. Daniel to address his concerns,

25   and reports that his questions were answered and that he has no objections to the

26   Settlement.  <u>See</u> Dkt. 304 at 2.  Accordingly, based on Class Counsel's representations, the

27   Court OVERRULES Mr. Daniel's objection as moot.

28

1

### e)   *E. Geertema*

2    E. Geertema claims that he received unsolicited emails from companies promoting

3   their stock.  He then contacted these companies and entered into a "contractual agreement"

4   which supposedly entitles him to collect $479,718.75 from Ameritrade.  Since Geertema's

5   letter appears to be a claim, Class Counsel forwarded his letter to the Claims Administrator

6   for consideration.  Dkt. 304 at 3.  To the extent that Mr. Geertema intended his letter to

7   constitute an objection, it is OVERRULED.

8

### f)   *Charles Hayden*

9    Charles Hayden complains that the font size on the postcard notice is too small to

10  read, and has requested a copy of the Claim Form.  Class Counsel has responded by

11  directing the Claims Administrator to provide the requested documentation.  Dkt. 304 at 3.

12  Mr. Hayden's putative objection is therefore OVERRULED.

13  ### III.   MOTION FOR ATTORNEYS' FEES

14  ### A.   LEGAL STANDARD

15    In cases such as the present where the settlement of a class action creates a common

16  fund, the Court has discretion to award attorneys' fees using either the lodestar method or

17  the percentage of the fund approach.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047

18  (9th Cir. 2002).  Under the lodestar method, the lodestar amount is calculated by

19  multiplying the number of hours reasonably expended by counsel by a reasonable hourly

20  rate.  Hanlon,150 F.3d at 1029.  Under the percentage-of-the-recovery method, the

21  attorneys' fees are calculated as a percentage of the common fund, with 25% established as

22  the benchmark in the Ninth Circuit.  Id.  However, even when applying the percentage

23  method, the lodestar method should be used as a cross-check to determine the fairness of

24  the award.  See Vizcaino, 290 F.3d at 1050.  Regardless of the methodology employed, the

25  Court must ensure that the fee award is reasonable.   In re Mercury Interactive Sec. Litig.,

26  618 F.3d 988, 992 (9th Cir. 2010); Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000).

27

28

**B.    ANALYSIS**

Plaintiffs request approval, pursuant to the Settlement, for payment of $500,000 in attorneys' fees—assuming that funds remain available after payment of all claims.  The Court finds this request to be reasonable.  When viewed as a percentage of the fund basis, the proposed fee award amounts of 7.7% of the fund, which is far less than the 25% benchmark of what the Ninth Circuit considers reasonable.

Cross-checking the proposed fee award with the lodestar further confirms its reasonableness.  Class Counsel (including the prior counsel) collectively has expended 2,816 hours for a lodestar amount of $1,295,019.70.  Strong Decl. Ex. A; Parisi Decl. Ex. A; Kamber Decl. ¶ 4; Chavez Decl. Ex. A; Beck Decl. Ex. A; Nelson Decl. Ex. 3.  The amount of hours expended in this case is reasonable, considering the lengthy and complicated procedural history of the action, which includes several failed attempts to reach a settlement acceptable to the Court.  Moreover, the reasonableness of a $500,000 fee award is underscored by the fact that in the original settlement agreement, the proposed fee award was $1.87 million.

Finally, Class Counsel seeks approval for payment of $27,807.91 in costs.  These costs include the cost of experts retained to assist them in analyzing the claims and providing assistance in the settlement process.  In addition, Class Counsel incurred costs for filing fees, photocopying costs, messenger and travel costs, and other administrative expenses.  The proposed amount of costs is reasonable in a class action of this nature.  See, e.g., Chu v. Wells Fargo Invs., LLC, C 05-4526 MHP, 2011 WL 672645, at *5-*6 (N.D. Cal. Feb. 16, 2011) (approving $40,528 in costs and $1.7 million in attorneys' fees based on a $6.9 million settlement fund).  The Court therefore GRANTS Class Counsel's motion for attorneys' fees in the amount of $500,000, plus an award of costs in the sum of $27,807.81.

//

//

//

1  **IV.   CONCLUSION**

2         For the reasons stated above,

3         IT IS HEREBY ORDERED THAT:

4         1.      Plaintiffs' Motion for Final Approval of Class Settlement and Plaintiffs'

5  Motion for an Award of Attorneys' Fees and Costs are GRANTED.

6         2.      The terms of the Settlement are incorporated into this Order and are

7  APPROVED.

8         3.      All objections to the Settlement are OVERRULED, as set forth above.

9         4.      The parties and the Settlement Administrator shall perform their respective

10  obligations under the terms of the Settlement.

11         5.      Class Counsel is awarded attorneys' fees in the amount of $500,000, plus

12  costs in the sum of $27,807.81, subject to the terms of the Settlement.

13         6.      Pursuant to the terms of the Settlement, the instant consolidated action is

14  dismissed with prejudice.

15         7.      This Order shall be filed in C 07-2852 SBA and C 07-4903 SBA, and both

16  files shall be closed and all pending matters therein shall be terminated.

17         IT IS SO ORDERED.

18  Dated:  September 12, 2011                      _Saundra B Armstrong_
                                                    SAUNDRA BROWN ARMSTRONG
19                                                  United States District Judge

20

21

22

23

24

25

26

27

28